## THOMAS J. CAMPBELL v. BROWN & BROWN.

*Presumption of Payment—Promise of one joint debtor does not bind the other.*

1. The running of the statute of presumptions (where the right of action accrued prior to 1868) is not arrested by the fact that the maker of a bond removed from the state before it matured and has not since returned. The proviso in the Revised Code, ch. 65, § 10, has no application to the case of a presumed payment arising from lapse of time; it has exclusive reference to the statute of limitations.

2. Nor will the promise to pay such bond by one of the joint obligors bind the other or deprive him of the benefit of payment presumed by lapse of time. (The effect of payment and promise to pay discussed by RUFFIN, J.)

(*McKinder* v. *Littlejohn,* 4 Ired., 198; *McKeethan* v. *Atkinson,* 1 Jones, 421; *Wilfong* v. *Cline, Ib.,* 499; *Lowe* v. *Sowell,* 3 Jones, 67; *Lane* v. *Richardson,* 79 N. C., 159; *Buie* v. *Buie,* 2 Ired., 87; *Pearsall* v. *Houston,* 3 Jones, 346, cited, commented on and approved.)

CIVIL ACTION tried at Spring Term, 1882, of BUNCOMBE Superior Court, before *Gilliam, J.*

On the 7th day of April, 1852, the defendants gave their bond to the plaintiff, whereby they covenanted to pay him, nine months after that day, at Pittsburg, in Pennsylvania, the sum of $1,670.50, and upon which they made two payments, as endorsed thereon—one of $334.00 on the 23rd of April, 1855, and the other of $99.75, on the 23rd of January, 1857.

This action, which was begun on the 29th December, 1876, is brought to recover the balance due on said bond. The defence relied on is payment presumed under the statute from lapse of time since the date of the last payment.

On the trial the plaintiff offered in evidence thirteen letters addressed to himself from the defendant W. J. Brown, the first one bearing date June 4th, 1853, and the last September 24th, 1870, and the others written at irregular inter-

vals between those two dates, and in all of which there were contained express acknowledgments of the debt as still subsisting, and promises to pay it. He also offered in evidence two letters from the defendant John E. Brown—one dated April 15th, 1855, in which he proposed to pay the interest then due and such as should become due in the next ensuing twelve months, provided the plaintiff would agree to extend, for that period, the time for payment of the principal; and the other dated July, 1855, in which was remitted a check for the sum of $334.00, he having been notified of the plaintiff's acceptance of the above proposition. He also offered in evidence a third letter from this defendant, dated the 19th September, 1856, and written from Australia, in which there was a renewed promise to pay the debt as soon as he should be able to do so, and requesting the plaintiff's forbearance. It was also shown in evidence that the defendant John E. Brown left the state of North Carolina in the year 1852, before the maturity of the bond, and that he has not resided here since that date.

The court instructed the jury that the unqualified admissions of the note sued on, and a promise to pay it, by one defendant, made within ten years preceding the bringing of the action, and before the bar of the statute was complete (counting out the time between May the 20th, 1861, and January 1st, 1870,) would rebut the presumption of payment as to both, and entitle the defendant to recover against both; and further, that if the defendant John E. Brown wrote to the plaintiff that he could not pay the note at the time, and begged indulgence, then the time of such indulgence given in pursuance of such request, would not be counted as to him, and that if the defendant John E. had left the state before the bond matured, and had not since returned, the statute would not run, or the presumption arise, as to him. As to all of which instructions the defendants excepted.

There was a verdict and judgment for plaintiff, and the defendants appealed.

*Messrs. C. A. Moore* and *H. B. Carter,* for plaintiff.
*Mr. J. H. Merrimon,* for defendants.

RUFFIN, J.   The right of action having accrued in this case prior to the year 1868, it is to be determined by the law as it existed at the date of the contract.

We are of opinion that the court erred in instructing the jury, that no presumption of payment could exist as to the defendant John E. Brown, because of his having departed from the state before the bond sued on had matured, and his being continuously absent since.

The *proviso,* contained in Rev. Code, ch. 65, § 10, whereby it is declared that as to a debtor, non-resident at the time a cause of action against him shall accrue, the plaintiff may have his action upon his return within the time limited for such actions, has no application to the case of a presumed payment arising from the lapse of time under the act of 1826, (Rev. Code, ch. 65, § 18.)   It formed a part of the act of 1715, and had exclusive reference to the statute of limitations proper.

It is the duty of a debtor, regardless of his place of residence, to seek his creditor, for the purpose of making payment; and there will be a presumption in favor of his having done so, in every instance, after the lapse of the time which the statute prescribes.

Though not possessing the force of an absolute statutory bar, the presumption of payment under such circumstances is very strong, and is favored by the law as tending to the repose of society and the discouragement of stale claims. It is one, indeed, that may be rebutted by proof of circumstances which raises a stronger counter-presumption, and as was said in *McKinder* v. *Littejohn,* 4 Ired., 198, evidence of a

change of residence, or even of a distant residence, may be received for this purpose in aid of other evidence, such as the insolvency and general destitution of the debtor.

But we know of no authority proceeding from this, or any other court, for saying that a mere change of residence is of itself sufficient, wholly to prevent the presumption, which the law, by an intendment of its own, raises from the lapse of the prescribed number of years, without something having been done on the part of the creditor, to enforce the satisfaction of his demand. And more especially would such a rule seem out of place in a case in which, like the present one, the instrument sued on was on its face made payable beyond the limits of this state, and the plaintiff himself so resided, and could have exactly the same remedies against the defendant, and the same opportunity to enforce them, after his removal, that he before possessed. The tribunals of the state of California, whither the defendant removed, were as open to the plaintiff as the courts of this state, or even as the courts of his own domicile; and if he would not avail himself of them, he should not be allowed to take advantage of his own laches to defeat a wholsesome provision of the law.

Nor can we concur in the instructions, as given, with reference to the effect, which the admissions and promises of one defendant should have upon the rights and obligations of the other. In England, as well as in most of the states of the Union, it is the generally admitted doctrine, that a *payment* made by one obligor in a bond before the expiration of the time necessary to raise a presumption of payment and within the prescribed period before the bringing of the action, will take the case out of the rule of presumptions as to all his coöbligors. Various reasons have been assigned for thus holding. In some of the cases it is said that a payment is an unequivocal admission of the debt as still subsisting, more reliable than any mere promise, as

being more deliberately made and less subject to miscon-
struction. Again, it is said to be an *act*, which inures to
the benefit of all the obligors alike, and of which each one
could avail himself, in case he were sued on the bond within
the time, and as they might take the advantage of it, so all
must be bound by it. The correctness of the rule itself has
been gravely doubted by some of the courts of the very
highest respectability, and finally after some fluctuation in
its decisions, it has been expressly repudiated by the court
of appeals of the state of New York in *Shoemaker* v. *Bene-
dict*, 1 Kernan, 176, and the broad ground taken, that it is
not within the power of the joint obligor, even by an actual
payment on the bond, to bind the others—and such is said
in 3 Parsons on Contracts, 80, to be the tendency of the
modern adjudications on the point.

In this state, however, the rule, which allows the obliga-
tions of one coöbligor to be affected by such a *payment* made
by another, has been directly applied in *McKeethan* v. *Atkin-
son*, 1 Jones, 421 ; *Wilfong* v. *Cline, Ib.*, 499; *Lowe* v. *Sowell*, 3
Jones, 67, and has been clearly recognized in a number of
other decisions. It is now too firmly established to admit
of a thought of its being disturbed by us. But farther than
this our courts have never gone ; and there seems to be
no warrant of authority for the position that by a naked
acknowledgment of the debt and a promise to pay it, when-
ever made and however unqualified they may be, can one
obligor bind his coöbligor, and deprive him of the benefit
of that presumption which the law makes in his behalf.

In *Lane* v. *Richardson*, 79 N. C., 159, we concede, there is
a *dictum*, which appears at first sight to give it some support,
but upon a closer examination it becomes perfectly manifest
that the learned judge, who delivered the opinion of the
court, was under no necessity to distinguish between the
effect of a payment and that of a mere promise, and that
in fact he did not undertake to do so. But in speaking of

the effect of "the admissions of one joint debtor," he had in his mind, only, the *payment* that had been actually made in the case, and the effect of which was the very matter to be determined.   Whenever·the question as to the effect of a bare acknowledgment has been presented, so as to render a decision upon it necessary and proper, the rule adopted by the court, as we understand it, has been the very opposite· of that laid down by His Honor in the court below. Though somewhat obscurely reported, the point was presented in *Buie* v. *Buie,* 2 Ired., 87, and it was there held that even if there should be evidence of an acknowledgment sufficient to repel the presumption of payment as to one of two of the makers of a bond, still if the presumption was not repelled as to the other, the case would come within the rule as to both, and both would be protected by the statutory presumption.

Whatever obscurity there may have been about this case, it was afterwards entirely removed by the opinion delivered in *Lowe* v. *Sowell, supra,* in which the late Chief Justice PEARSON uses the following language : " In 1841, while on the superior court bench, on the supposition that there was evidence to repel the presumption of payment in regard to one of the defendants, I instructed the jury, if the presumption was not repelled also in regard to the other defendant, they should find the issue on the plea of payment in favor of both, for if the presumption held as to one, payment by him discharged the debt.   This ruling was approved by the supreme court, and *the distinction was taken between matter which extinguished the debt, and that which only was a bar to the remedy.   Buie* v. *Buie,* 2 Ired., 87."

The rule, as thus expounded, was reïterated and enforced in *Pearall* v. *Houston,* 3 Jones, 346, and we do not feel at liberty at this day to depart from it.

All the cases referred to by counsel, in support of the plaintiff's position, had reference to unsealed instruments,

and therefore fell under the "statute of limitations" proper, which affected only the remedy of the parties plaintiff, and as we have just seen, the law makes distinction between such cases and those in which the statute raises a presumption, such as affects the debt itself, and if unrebutted, extinguishes it.

It may be difficult to perceive any just principle upon which to base such a distinction, but it has been clearly marked out by the court and constantly observed. Indeed, if resort be had in the matter to principle, as distinguished from precedent, it is impossible to understand how, in any case, the unauthorized acts and declarations of one party, though he be jointly bound, can be admitted to enlarge the promises or extend the obligations of another, and hence we are not disposed to push the rule one inch beyond the requirements of the adjudicated cases.

To adopt the conclusion of the court below is in effect to say, that one of two joint obligors may, by an acknowledgment of the debt made on the last day of the ninth year after the execution of the bond, so operate upon the liability of his joint obligor, as to continue it throughout another statutory period of ten years; and this, without the assent of the latter, or, as it may be, even without his knowledge.

We, therefore, feel constrained to reverse the judgment of the court below, though with some reluctance, since as disclosed in the evidence, we are inclined to the opinion that the promises of each one of the defendants may have been sufficient to repel the presumption as to himself, and that if the case had been so put to the jury, they might properly have returned the verdict they did against both.

Inasmuch, however, as it is impossible to know but that the verdict against one was the result of evidence with regard to the admissions and promises of the other, there can be no alternative other than a *venire de novo.*

Error. *Venire de novo.*