## FENDEL SUTHERLIN, RESPONDENT, *v.* JANE ROBERTS, APPELLANT.

STATUTE OF LIMITATIONS.—The defendant and her co-obligor executed a mortgage to secure payment of their joint note, and suit was commenced to foreclose the mortgage more than ten years after the note fell due; within the ten years part payment had been made on the note by the administrator of the defendant's co-obligor: *Held*, that the suit was not barred by the Statute of Limitations.

IDEM.—By § 25 of the Civil Code, the fact of part payment is made the test for ascertaining whether the action or suit is barred by the Statute of Limitations, and if it is not barred, the action may be founded on the original promise.

IDEM—WHO MAY MAKE PAYMENT TO TAKE CASE OUT OF STATUTE.--Where part payment is made upon an existing contract of the kind specified in § 25, the creditor retains the right to sue on the original contract, without regard to the theory of a new promise, during the period prescribed, counting from the time of payment, and any person who could be compelled to pay is competent to make the payment.

APPEAL from Douglas County.

The facts are stated in the opinion of the Court.

*W. R. Willis, and Watson & Lane,* for Appellant.

A payment by an administrator does not take the debt out of the statute as against a surviving debtor.

It is not a voluntary payment. There is no privity between the co-contractor and the administrator of a deceased joint contractor. (Civ. Code, §§ 1110, 1113, 1118, 1129, 1131, 1140 and 1141; *Partlow* v. *Singer,* 2 Ogn. 307; Civ. Code, § 4; 3 Bl. Com. 306, 307, and note; *Smith* v. *Irvin,* 37 Mo. 169, 174, 175; *Whitcomb* v. *Whiting,* 1 Smith's Leading Cases, 941, 942; 9 Pick. 42; 37 Mo. 104; Angell on Limitations, §§ 251, 252, 253, 240, and note 1; Id. 276, 287; *Root* v. *Bradley,* 1 Kansas, 437, 443-4; Md. Dig. 324, § 2 on Payments.

The rights of a party shall not be prejudiced by the declaration act or omission of another, except by virtue of a particular relation between them. (Civ. Code, § 674.)

*W. W. Thayer and John Burnett,* for Respondent.

The payment made by the administrator, May 18, 1864, suspended the operation of the Statute of Limitations from the time the claim matured until that of such payment. (Civ. Code, § 25; 9 Minn. 13; 2 Ogn. 307; 13 Pick. 206; Ang. on Limitations, § 206.)

It will be seen, upon examination of the section of the statute referred to, that it is *sui generis,* a provision peculiar to the limitation laws of Minnesota alone, except that it has been adopted by this State.

By the Court, UPTON, C. J.:

This appeal involves a construction of the Statute of Limitations. The suit was brought to foreclose a mortgage executed to secure payment of a joint note for $2160.40 and interest, made by the defendant and Jesse Roberts, now deceased. It appears on the face of the complaint that the note, by its terms, became due February 1, 1862, and the suit was not commenced until 1873, more than ten years after the cause of suit accrued. But it is alleged in the complaint that on the 18th day of May, 1864, the administrator of the estate of Jesse Roberts, in due course of administration, paid the sum of $960.16 in part satisfaction of the note, leaving unpaid principal and interest to the amount of $3068.64. It also appears by the complaint that the money so paid was proceeds of the real estate of the decedent, under a sale made by order of the Probate Court. The defendant demurred to the complaint, on the ground that the facts stated do not constitute a cause of suit, and the demurrer was overruled. From that ruling the defendant appeals, and presents the question whether the payment made by the administrator of the defendant's co-obligor, brings the case within § 25 of the Code.

The appellant takes the position that a payment by an administrator is not a voluntary payment, that there is no privity between the co-contractor of the decedent and the administrator, and that such payment does not take the

case out of the statute, as against a surviving debtor.   He cites many cases in which a distinction is made between the acts of an administrator or executor and the acts of the joint contractor himself, and where it is held that there is no such relation between the former and the co-obligor of the decedent, as will authorize the former to affect the remedy as against the latter, or in other words, no such relation as will empower the administrator or executor to make a promise which will bind the co-obligor of the decedent.   If these authorities are applicable in construing § 25 of the Code, it must be conceded that they go far in support of the appellant's position; but it will be observed that the statutes under which these cases arose were essentially different from ours.   Section 25 of the Code is as follows:

"Whenever any payment of principal or interest has been or shall be made upon an existing contract, whether it be bill of exchange, promissory note, bond or other evidence of indebtedness, if such payment be made after the same shall have become due, the limitation shall commence from the time the last payment was made."

In tracing the legislation on this subject, from the Act of 21 James I, ch. 16, down to the time of the latest authority cited by the appellant, we find no enactment expressed in language similar to the section now under consideration; and a review of the adjudged cases leads to the conclusion that the leading intent and object of this enactment is to divest the subject of numerous exceptions and an intricate maze of subtle distinctions resulting in the course of time from judicial opposition to the letter of the earlier enactments, and to sweep away the complication of doubtful and disputed questions with which the subject has been encumbered.   It will therefore be unnecessary to refer to the numerous authorities cited, except so far as they may bear upon the question whether such is the intent and object of our statute.   The most prominent feature of what is new in our statute is, that, by § 25, part payment prevents the time of limitation from commencing to run; whereas, under previous statutes and adjudications, the time of limitation

actually ran against the debt, and part payment was held to be evidence of a new promise, which, being supported by the original consideration, became the basis of a new cause of action.

In 1st Smith's Leading Cases, 703, where the authorities on this subject are collated and so ably reviewed, it is said that the decision in the leading case— *Whitcomb* v. *Whiting* —was based on the idea "that if the presumption of payment arising from the lapse of time was rebutted by the acknowledgment or confession of the defendant, the end which the Legislature had in view was sufficiently attained" —an idea which the reviewer declares "inconsistent with the letter and spirit of the statute." The theory that the statute operated as a bar, by raising a presumption of payment, was prevalent at that time; but that idea is not expressed in the opinion as reported in the case of *Whitcomb* v. *Whiting*. According to the report the decision was placed on grounds quite independent of that doctrine. Lord Mansfield said in that case: "Payment by one is payment by all, the one acting virtually as agent for the rest; and in the same manner, an admission by one is an admission by all; and the law raises a promise to pay when the debt is admitted to be due." If his Lordship had added that, part payment is an admission of the residue of the debt, he would have made a concise but full statement of the theory upon which the whole discussion of the effect of part payment has proceeded in the cases cited by counsel.

In all these cases a payment which takes the case out of the statute, and the express promise which has that effect, have been placed side by side, and they have each been treated as the basis or proof of a new promise founded on the original consideration. So universally are these decisions based on the theory of a new promise, express or implied, that not a single case, meeting approval in modern times, is put on any other ground.

After judicial decisions had gone so far in admitting or creating exceptions that the rulings of the Courts were sometimes called judicial legislation, the extent of these exceptions was greatly narrowed by direct legislation from

time to time.   Section 24 of our Act is but a copy of statutes that have long been in force elsewhere; its effect being that a direct promise is not sufficient to take the case out of the general rule of limitation, unless the promise is contained in a writing signed by the party to be charged; but the enactment does "not alter the effect of any payment of principal or interest." The effect of such payment was, therefore, until the enactment of ? 25, still left a subject of judicial decision, and the Courts continued to hold that payment of part of the debt, unaccompanied by circumstances qualifying its effect, was an admission that the debt is owing, and that the law raises the promise to pay when the debt is admitted to be due.   Much of the vast research and learning exhibited in the cases cited by counsel, has been devoted to determining under what circumstances part payment should not be considered a sufficient admission of the indebtedness to raise a presumption of a new promise.

It needs but a cursory examination of the cases relating to the effect of part payment under former statutes, to perceive that most embarrassing complications encumbered the subject when our statute was being enacted; a condition of the law which would naturally create a desire to substitute more simple rules for determining the liabilities of parties.   By referring to the review of *Whitcomb* v. *Whiting*, above cited, it will be seen that the subject had not only become extremely complicated, but that there were numerous points still involved in doubt.

Among the controverted points upon which eminent counsel have differed, and upon many of which even the adjudged cases are in conflict, the following may be mentioned:—Whether there is such privity between co-obligors that payment, or a new promise, express or implied, made by one should affect the remedy as against the other: *Exeter Bank* v. *Sullivan*, 6 N. H. 124; *Fry* v. *Barker*, 4 Pick, 252; *Coleman* v. *Forbs*, 10 Har. 156.   Whether one of the co-obligors being surety is material: *Perham* v. *Reynolds*, 2 Bing. 306.   Whether payment by an indorser will bind other parties: *Beb* v. *Peyton*, 11 Sme. and M. 275; *Dean* v.

*Monroe*, 32 Geo. 28.   Whether it is material that the stat-
ute had already run when the payment was made: *Channell*
v. *Ditchburn*, 5 Mason and Welsby; *Yong* v. *Monpoey*, 2
Bailey, 278; *Ayers* v. *Richards*, 12 Ill. 126; *Emmet* v. *Over-
ton*, 2 B. Mon. 643.   Whether the executor or administrator
holds such relation that the co-obligor of the decedent
should be bound by a new promise of the executor or ad-
ministrator, or that a new promise should be implied from
a payment made by such agency: *Hathaway* v. *Haskell*, 9
Pick. 32; *Whitaker* v. *Mitchell*, 15 Me. 360; *Bloodgood* v.
*Bruin*, 1 Seld. 362.   Whether payment by a co-contractor will
be construed to be a new promise as against the estate of the
deceased co-contractor: *Atkins* v. *Tredgold*, 2 Barn. and Cres.
22.   Whether payment by an executor would bind his co-
executor: *Tulloch* v. *Dunn*, 1 R. and M. 416; *Cayuga Bank*
v. *Bennett*, 5 Hill, 236; *Johnson* v. *Beardslee*, 15 John. 3.
Whether such is the effect of payment by a co-contractor
who is on the verge of bankruptcy: *Goddard* v. *Ingram*, 3
Q. B. 839.   Or of payment from the assets of a bankrupt's
estate: *Brondrum* v. *Wharton*, 1 Barn. and Ald. 463.
Whether the debtor has a right to appropriate a payment
made generally, to an item barred by the statute: *Walker* v.
*Butler*, 6 E. and B. 506.   And if he has that right in any
case, under what circumstances may he exercise it; what
shall raise a presumption that he has exercised it, and what
effect will such appropriation have on other items in the
same account: *Nash* v. *Hodgson*, 1 Kay, 650.   Whether a
verbal admission is sufficient proof of a part payment: *Wil-
lis* v. *Newham*, 3 Y. and J. 518.   Whether the new promise
to be inferred from part payment may be given in evidence
under an averment contained in the declaration of payment
of interest within six years, instead of giving it in evidence
under a replication: *Hollis* v. *Palmer*, 2 Bing. N. C. 713;
*Ross* v. *Ross*, 20 Ala. 105.   Whether payment by a wife
without authority from the husband on a note made by them
jointly before marriage will warrant the inference of a new
promise: *Neve* v. *Holland*, 17 Q. B. 262.

Conflicting decisions on many of these and on other sim-
ilar practical questions rendered this subject an exceptional

field of unsettled disputes, and these questions have arisen
upon points so numerous and diverse that if each one was
settled and reduced to a certain rule, the business man
would find the rules extremely complex and difficult of
application. This condition of the law at the time of the
enactment is important, inasmuch as it is the duty of a
Court when the construction of a statute is open to inquiry
to consider "how the law stood at the making of the Act,
what the mischief was, and what remedy the Legislature
has provided to cure the mischief." To ascertain how the
law stood at the enactment of the statute under consider-
ation, resort must be had to adjudged cases, some of which
are above referred to as exemplifying the extent of these
refinements and subtle distinctions. These exceptions,
originating, it is said, in judicial opposition to the harsh-
ness, real or supposed, of the letter of former statutes,
have in the course of time increased in number and kind,
and become complicated in the modes of their application,
until the features of the original enactments supposed to
underlie them are scarcely discernible through the luxu-
riant outgrowth.

If the Legislature had desired to retain the theory of a
new and implied promise with its intricacies as well as its
advantages it would have been only necessary to copy the
language of the statutes on which these exceptions are sup-
posed to be founded; but we see that that course has been
carefully avoided in drafting this section; the words of the
statute plainly indicate a design to institute a new rule sim-
plifying the law as to the effect of part payment.

The express words of the statute make the fact of the pay-
ment the test for ascertaining the period within which an
action may be commenced on the original promise or cause.

The fact of payment being made the test for determining
when the period commences to run, the theory of requiring
a new promise, or of founding an action on a presumed new
promise, is abandoned, and the new promise is no longer
the foundation of the plaintiff's right of action. By the
letter of the section no new promise appears necessary; no
new promise need be resorted to, even if the promise should

be often renewed, because the statutory limitation does not run against the original cause of action.  By the words of the Act, "The limitation shall commence from the time the last payment was made."

If the difficulty of applying the complications involving this subject was the mischief, actual or imaginary, which the Legislature sought to avoid, and if that intention is expressed in the Act, we are in duty bound to carry out the intent, notwithstanding our veneration for the ancient theory, and our respect for the wisdom and learning displayed in unfolding and elucidating its subtle distinctions. If the Legislature has substituted a new and different period of limitation, not depending in any manner on the presumption of a new promise, those cases which treat only of the question whether the particular circumstances of the payment established the fact of a new promise are no longer authoritative.

The case of *Pitman* v. *Foster* (1 Barn. and Cres. 248), illustrates how absolutely the exceptions above mentioned rested on the theory of a new promise.  In that case, suit was brought against a husband and wife and one Foster, on a promise made by Foster and the wife before the marriage. The question being whether payment made by the husband took the case out of the statute, it was said, "As the *feme covert* is incapacitated from promising in her own person, so no one could promise for her;" and, "If the husband's acknowledgment is regarded as a promise by the husband, it was a variance from the cause of action set forth in the declaration."  So, also, in *Jones* v. *Moore* (5 Binney), and in *Betton* v. *Cutts* (11 N. H. 170), it was held that "an issue joined under a plea of the statute, to a declaration averring a promise to the testator, cannot be supported by an acknowledgment or payment to his personal representative;" and in *Benjamin* v. *De Groot* (1 Denio, 151), it was held that an acknowledgment made by an executor cannot be replied or given in evidence under an answer of *non assumpsit infra sex annos*, to a declaration setting forth a promise made to the testator.

It was doubted in *Carshore* v. *Huyck* (6 Barb. 483),

whether proof of the new promise that is to be implied from payment can be given in evidence where the declaration is on an express contract. It is not necessary to cite additional cases to show that payment under circumstances which negatived the idea of a new promise would not, prior to the enactment of our statute, take a cause out of the statute; nor for the purpose of showing that in all cases where part payment became a material fact, it became so because the time of limitation had, at the commencement of the action, run against the original cause of action. The confidence with which counsel have relied on adjudications based on the theory of a new promise resting on the original consideration has induced a more extensive reference to this branch of the subject than would otherwise have been deemed necessary. As to the applicability of those adjudications. it may be observed that if § 25 of our statute had been omitted, the preceding section would have left the effect of part payment precisely what counsel now claim it to be; that is, if the payment was made under circumstances from which a new promise could be inferred, it would be effectual in reviving or extending the right of action, and otherwise of no effect. But the Court is satisfied that the explicit language of § 25 was employed for the purpose of avoiding that condition of things, and for the purpose of making a definite and certain rule as to the effect of a part payment.

The circumstance that the language of this section is not copied from any of the older statutes, and that it lays down a rule differing in form and substance from any and all of those enactments which form the bases of the precedents above referred to, strongly indicates an intention to make a new rule resting on a literal construction of the language employed.

We are not aware of a similar enactment elsewhere, except in the State of Minnesota. The statute of that State contains a provision in the same words of our own, and the language of § 25 was considered by the Supreme Court of that State in *Whittaker* v. *Rice* (9 Minn. 13), the point there involved being the same as that decided by this Court in

*Partlow* v. *Singer* (2 Ogn. 307); that is, whether part payment, made by one of several joint makers of a promissory note, is payment within the meaning of the statute, as against the other joint makers; and the ruling was the same in the two cases. In the case in this State, Chief Justice Boise said: "Ordinarily the statute begins to run when the note is due; in this case the statute fixes the time at the date of the last payment, and such plain language can have no other meaning."

His remark, that "it was the intention of the Legislature to revive the old rule, reviving liabilities as to all on a payment made by one of several joint debtors," it is claimed, indicates the reverse of the position here taken. In support of this, it is said there would be no occasion to revive a liability if it never had been barred; but an examination of the whole case does not indicate an opinion that the original cause of action had become barred, or that the plaintiff should recover because of a new or implied promise. The plaintiff's right in that case is placed on the ground that "the statute fixes the time when the limitation shall commence;" and, by the words "old rule," is undoubtedly meant the rule that "payment by one joint contractor is payment by all," which it is there said was held in England, in Maryland and Massachusetts, but has not prevailed in New York since the case of *Van Keuren* v. *Parmelee* (2 Coms. 523). It is evident, from the whole tenor of the opinion, that what is said of reviving liabilities does not refer to reviving a cause of action that has been barred.

The reasonable construction of this statute is, that whatever amounts to part payment of principal or interest on an existing contract of the kind specified, made before the limitation has expired, places the creditor in a position that he may sue on the original contract at any time during the period prescribed, counting from the time of payment.

We have then only to consider what is a payment within the meaning of the statute. The appellant claims that the payment should be voluntary, and should be made by one who holds such relations as will enable him to bind his co-contractor; and he cites *Smith* v. *Irwin*, 37 Mo. 169; *Hath-*

*away* v. *Hastings*, 9 Pick. 42; *Root* v. *Bradley*, 1 Kansas, 437.

In each of these cases it is held that payment, by an administrator, does not take the case out of the Statute of Limitations, but it is thought the reasoning upon which these decisions is based is not applicable under our statute. The decisions were rendered under provisions similar to that of § 24 of our Code, and they each lay stress upon the position that the administrator had no authority to "create a new debt" or to make a new promise, binding upon the co-obligor of the decedent.   In *Smith* v. *Irwin* payment by the administrator is spoken of as not being voluntary, but it is mentioned in connection with the subject of an implied promise; it was held there that the administrator's acts did not establish a promise, and that there was not such relation between him and the other joint makers that an agency to make a new promise could be implied; but there is nothing in either of those causes from which it can be inferred that the Court would not have held the act of the administrator a payment within the meaning of our statute.   We think any person who could be compelled by law to pay the note is competent to make the payment contemplated.

The decree of the Circuit Court should be affirmed.