## COWHICK, ADMINISTRATOR, &c., v. SHINGLE,
## ET AL.

LIMITATION OF ACTIONS—PAYMENT BY ONE OF TWO SEVERALLY LIABLE—PLEADING—"COMMON LAW."

1.  Where it appears upon the face of the petition that the cause of action accrued at such a period, that, under the statute of limitations, no action can be brought, a demurrer will lie, upon the ground that the petition does not state facts sufficient to constitute a cause of action.

2.  A payment, an acknowledgment or a promise in writing will not avail to take a case out of the statutory bar, unless made by a party to be charged thereby, or an agent author-ized for that express purpose.

3.  A partial payment on a joint and several note by one of the several makers will not prevent the running of the statute of limitations as to the other makers.

4.  As a rule, the term "common law" means both the com-mon law of England, as opposed to statute or written law, and the statutes passed before the emigration of the first settlers of America.

[Decided September 21, 1894.]

ERROR to District Court for Laramie County. HON. RICH-
ARD H: SCOTT, Judge.

The facts in this case were stated by Mr. Justice Clark,
as follows:

The plaintiff in error was plaintiff below. The action was
brought in the court below to recover upon a promissory note
made by the defendants to plaintiff's intestate, and which is
as follows:

"$100.00.          Cheyenne, Wyoming, January 3, 1888.
"One year after date we jointly and severally promise to
"pay to the order of John Y. Cowhick one hundred dollars,
"at the First National Bank of Cheyenne, for value received,
"waiving benefit of stay and exemption laws, and appraisal
"on sale before execution, with interest at 1 1-2 per cent. per
"month from date until paid. If this note is not paid at
"maturity the undersigned agree to pay expenses of collec-
"tion, including attorney's fees.
                              "JOHN K. SHINGLE,
                              "H. ALTMAN."

It is alleged in the petition of plaintiff:

"That the time within which said note was due and payable
"has long since elapsed, and yet said note has not been paid,
"nor any part thereof, except interest thereon from the date
"of said note up to and including the first day of June, A. D.
"1890, which said interest from the date of said note up to
"and including said first day of June, A. D. 1890, was paid
"to said John Y. Cowhick by said John K. Shingle without
"the knowledge or consent of Henry Altman, on said first
"day of June, A. D. 1890."

The defendant Shingle made default. The defendant Alt-
man interposed a general demurrer to the petition, and for
ground thereof relies upon the statute of limitations, which
demurrer was sustained by the court below.

Plaintiff brings the case here, assigning as error:

1st. That the court erred in sustaining the demurrer of
defendant Altman to plaintiff's petition.

2nd. · That the court erred in rendering judgment in favor of defendant Altman. ..

The cause of action upon the note accrued on the 7th day of January, A. D. 1889, and this action was commenced on the 2nd day of February, A. D., 1894, more than five years after the cause of action accrued.. ··

The sections of the statute relied upon are the following of the Revised Statutes of 1887:

"Sec. 2368.    Civil actions other than for the recovery of "real property can only be brought within the following "periods, after the cause of action accrues.

"Sec. 2369.    Within five years an action upon a specialty "or any agreement, contract or promise in writing."  * . * *

"Sec. 2381.    When payment has been made upon any de- "mand founded on contract or a written acknowledgment "thereof, or promise to pay the same has been made and "signed by the party to be charged an action may be brought "thereon within the time herein limited, after such payment, "acknowledgment or promise."

The foregoing statutory provisions have been in force in this state since June 1, 1886: prior to that time and since March 1, 1874, the code provision in force here which corresponds with Sec. 2381, supra, was Sec. 21, Ch. 13, Compiled Laws 1876. We quote the latter section as we shall have occasion hereinafter to refer to it. It was as follows:.

"Sec. 21.    In any case founded on contract where any part "of the principal or interest shall have been paid, or an "acknowledgment of an existing liability, debt or claim or "any promise to pay the same shall have been made, an action "may be brought on such case within the period prescribed "for the same, after such payment, acknowledgment or prom- "ise, but such acknowledgment or promise must be in writing, "signed by the party to be charged thereby."

*R. W. Breckons,* for plaintiff in error.

The rule, so far as common law is concerned, respecting the effect of a payment by one co-obligor upon the statute

of limitations, has been laid down differently in the various states. In England, until altered by legislation, the rule was that payment by one was payment for all. (Whitcomb v. Whiting, 2 Douglas.) Where this rule has been followed in the United States the reasoning is more satisfactory than under the contrary doctrine. (Crass v. Allen, 12 Sup. Ct. R., 68; Bank v. Colton, 53 Wis., 31; Mainzinger v. Mohr, 41 Mich., 685; Quimby v. Putnam, 28 Me., 419; Sigourney v. Drury, 14 Pick., 387.)

*H. Donzelmann,* for defendants in error, maintained that a payment by one would not prevent the running of the statute as to a co-obligor, and cited the following authorities: (Brandram v. Wharton, 1 B. & A., 463; Wood on Lim., p. 605; Dickerson v. Turner, 12 Ind., 230; Vanders v. Lefavorer, 2 Blackf., 373; Steele v. Sauder, 20 Kans., 38; Exeter B'k v. Sullivan, 6 N. H., 124; Coleman v. Fobes, 22 Pa. St., 156; Bush v. Stewell, 71 Pa. St., 208; Smith v. Ludlow, 6 John., 267; Van Keuren v. Parmelee, 2 N. Y., 523; Shoemaker v. Benedict, 11 N. Y., 176; 91 id., 203; 89 id., 456; 24 id., 317; Davis v. Mann, 43 Ill. App., 301; Lowther v. Chappell, 8 Ala., 353; Myatts v. Bell, 41 id., 222; Tate v. Clements, 16 Fla., 339; Steele v. Jennings, 1 McMullen (S. C.), 297; Walters v. Craft, 23 S. C., 578; Beloit v. Wynn, 7 Yerg., 534; Schindell v. Gatis, 46 Md., 604; Willoughby v. Irish, 35 Minn., 63; Mayberry v. Willoughby, 5 Neb., 368; Hance v. Hair, 25 O. St., 349; Marienthal v. Mosler, 16 O. St., 566.)

CLARK, JUSTICE (after stating the facts):

It is the settled construction of our Code of Civil Procedure that "where it appears upon the face of the petition "that the cause of action accrued at such a period that under "the statute of limitations no action can be brought, the de-"fendant may demur to the petition on the ground that the "petition does not state facts sufficient to constitute a cause "of action." Sturgis et al. v. Burton et al., 8 Ohio St., 215.

It is clear that more than five years elapsed between the date the cause of action accrued upon the note and the commencement of the suit, and hence the demurrer of the de-

fendant Altman was properly sustained by the court below, unless the payment of the interest by the defendant Shingle on the 1st day of June, 1890, had the effect of suspending the running of the statute in favor of the defendant Altman. Briefly stated, the sole remaining question for determination is: Does a partial payment by one of two parties jointly and severally liable upon a promissory note suspend the running of the statute in favor of the other?

Before proceeding to the consideration of our own statutes, so far as they bear upon this question, it may not be amiss to briefly look into the history of the law upon this subject.

The first statute in our system of jurisprudence which placed limitations upon personal actions was Ch. 16 of the 21st of James I, enacted in 1623. In the construction of this statute, and of statutes enacted at an early day, by several of the States of the Union, which were substantially like it, there was great diversity of opinion upon the question we have presented here. The leading case on this question in England is Whitcomb v. Whiting, Douglas 652, decided in 1781, where it was held by Lord Mansfield and his associates that "payment by one is payment for all, the one acting "virtually as agent for the rest; and, in the same manner, "an admission by one is an admission by all; and the law "raises the promise to pay, when the debt is admitted to be "due."

Willes, Justice, concurring in the views expressed by Lord Mansfield, further said: "The defendant has had the advan- "tage of the partial payment, and, therefore must be bound "by it."

This case seems to be wholly opposed in principle to the case of Haslerig v. Bland, 2 Ventris, 151, decided many years before, but after the adoption of the statute of 21 James I. While the doctrine of Whitcomb v. Whiting was several times seriously questioned by eminent English judges, notably by Lord Ellenborough in Brandram v. Wharton, 1 Barn & Ald, 463, it became the generally accepted rule in England, and was such until Parliament interfered in 1828, and, adopting what is known as Lord Tenterden's Act, de-

clared among other things that no joint contractor should be in any manner affected by any written acknowledgment, or promise made by their co-contractors, thus limiting the effect of written acknowledgments or new promises to the parties making them. This act, however, contained this proviso: "Provided, always, that nothing herein contained shall alter "or take away or lessen the effect of any payment of any "principal or interest made by any person whatsoever." We cite this thus fully because it is urged upon us that this statute is in substance the same as our Sec. 2381, quoted in the statement of facts hereto appended, and inasmuch as the English courts after the adoption of the act gave the same effect to a partial payment by one of two or more joint obligors as was given in Whitcomb v. Whiting, that hence the cases so holding are authority for the proposition that our statute should be so construed as to make a payment by one obligor effective as to the others. I cannot assent to this contention because, considering the state of the law in England at the time of the adoption of Lord Tenterden's act, as declared by the courts there, it seems clear to my mind that the effect of the proviso in that act was to leave the legal effect of a payment made by "any person whatsoever" just exactly what it had been held by the courts to have been; in fact it might be very strongly urged that the proviso was in effect a legislative affirmation of the rule previously established by the courts, and such in effect seems to have been the view taken by the court in Wyatt v. Hodson, 8 Bing, 309, and by Chief Justice Shaw in Sigourney v. Drury, 14 Pick, 387. By this act of Lord Tenterden, the effect of the decision in Whitcomb v. Whiting was limited solely to partial payments, and its effect in that respect was entirely overthrown in 1856 by the act entitled the Mercantile Law Amendment Act. So that long before the Territory or State of Wyoming came into existence, the doctrine of that celebrated case had met its death in the land of its birth, and as stated at pages 608 and 609 of Wood on Limitations: "The "judgment of the profession as well as of the people gen- "erally, as to the wisdom of the doctrine, is best evidenced

"by the circumstance that it has been nearly obliterated "by legislative and judicial action."

In the United States under statutes substantially like the English statute the doctrine of Whitcomb v. Whiting met with great disfavor at an early day and was wholly repudiated in several well considered cases; among them may be mentioned as especially worthy of consideration: Bell v. Morrison, 1st Pet. (U. S. S. C.), 351; Exeter Bank v. Sullivan, 6th N. H., 125; Coleman v. Fobes, 22 Pa. St., 156; Levy v. Cadet, 17 S. & R., 126; Van Keuren v. Parmelee, 2 N. Y., 524; Shoemaker v. Benedict, 11 N. Y., 176; Yandes v. Le Favour, 2 Blackf., 371; Beloit v. Wayne, 7 Yerg., 534; Muse v. Donelson, 2 Hump., 166; Lowther v. Chappell, 8 Ala., 353; Succession of Voorhies, 21 La. Ann., 659; Evans v. Duberry, 1 Marsh (Ky.), 189; Steele v. Jennings & Beatty, 1 McMull. (S. C.), 297, star pag'g.

In some of the above cases the acknowledgment or partial payment relied upon to take the case out of the statute was made before the bar of the statute had become complete; but in my judgment there is no distinction in principle between the legal effect of acknowledgment or payment made before or after the bar of the statute had attached; in either case the legal effect thereof is to create a new cause of action. Muse v. Donelson, 2nd Humph., 169; Bell v. Morrison, 1st Pet., 351; Shoemaker v. Benedict, 11 N. Y., 176; Allen v. O'Donnell, 28 Fed. Rep., 17, at p. 25; Wheelock v. Doolittle, 18 Vt., 440, at p. 442; Willoughby v. Irish, 35 Minn., 63, at p. 69.

In the case of Coleman v. Fobes, 22 Pa. St., 156, it is said: "We cannot but regard the case of Whitcomb v. Whit-"ing, which declared that a payment by one joint debtor was "a new promise by all as being at the bottom of all the con-"fusion that exists in the decisions in England and in this "country on the subject of this statute in its relation to joint "debtors." And from the review in that case of the English decisions it would seem that the doctrine had led to inextricable confusion; and to such extreme views that the stat-

ute was in effect a nullity, as shown by the decision in God-
dard and Goddard v. Ingram and Wartnaby, 3 Ad. &
El., U. S., 839. In this case the two defendants had
been partners with one Shuttleworth; the partner-
ship was dissolved in 1832, and upon the dissolu-
tion, was indebted to the plaintiffs, bankers, in the sum
of 2,000 pounds. In 1839 James Goddard, one of the
plaintiffs who was individually indebted to the old partner-
ship on his single account in the sum of 35 pounds, drew his
check upon his own bank for that sum and placed it to
the credit of the partnership. A day or two afterwards Shut-
tleworth, who was hopelessly bankrupt, called at the bank and
expressed himself satisfied with the transaction. This was
held a sufficient payment to take the case out of the statutes,
as to the two defendants; and, in the light of this case, it is
not surprising that the Pennsylvania court should say: "To
"carry out this principle of Whitcomb v. Whiting would
"allow a debtor that is hopelessly bankrupt to bind others
"by his new promise, and even to be hired to do it, and thus
"far the example has led in England."

On the other hand, it is true that in many States, espe-
cially the New England States, the doctrine of Whitcomb v.
Whiting was upheld and under statutes similar to the English
statute enforced.

In Sigourney v. Drury, 14 Pick'g, 387, Chief Justice Shaw
rendered an opinion sustaining the doctrine of Whitcomb v.
Whiting, and which may well be considered the leading case
upon that side of the question in the United States.

Cox v. Bailey, 9 Ga., 467, is another strongly reasoned
case in favor of the doctrine. The same rule was held to be
the law in Rhode Island, Connecticut, Maine and other States,
but it is, I think, a circumstance worthy of great considera-
tion that within a few years after the rendition of the deci-
sions sustaining this rule, the legislatures of nearly all the
States so holding by legislative enactment declared that no
joint debtor should be deprived of the benefit of the statute
by reason of the fact of payment by his co-debtor.

It must be admitted that at the time of the adoption of

section 21, Ch. 13, Compiled Laws of Wyoming 1876, to
wit: December 11, 1873, in fact, at the time of the organ-
ization of the Territory of Wyoming in 1868, the rule that
one joint debtor was affected by the partial payment of his
co-debtor in such way as to deprive him (the former) of the
benefit of the statute, prevailed in only a few of the States of
the Union, to wit: Connecticut, New Jersey, Rhode Island,
Delaware, Georgia, Oregon, North Carolina, Missouri, and
perhaps at that date Minnesota, and one or two other States.
In all the other States and in England as well, the rule had
been entirely overthrown, either by judicial decision or by
legislative enactment.  This fact is in my mind a strong
circumstance, as evidencing the judgment of the profession
and of the people as well, concerning the wisdom and pro-
priety of the rule here contended for by the plaintiff, and
is entitled to consideration in attempting to properly construe
our statute upon the subject, because when we come to con-
strue our statute it is a fair presumption that our legislature
when engaged in legislating upon a subject so generally
acted upon in other jurisdictions did have some regard for
the general state of the law upon that subject, and we may
very properly bear this in mind when we undertake to ascer-
tain what was the legislative intention with respect to the
statute.  It is urged upon us that "when a statute is in gen-
"eral terms it is subject to the principles of the common law,
"and is to receive such construction as is agreeable to that
"law in cases of the same nature."  And then it is said "that
"the common law rule is clearly laid down in Whitcomb v.
"Whiting."  As a rule the term "common law" means both
the common law of England as opposed to statute or writ-
ten law, and the statutes passed before the emigration of
the first settlers of America; Patterson v. Winn., 5 Pet., 241.
Commonwealth v. Leach, 1 Mass., 61.  And applying this
definition to the matter in hand, I am unable to perceive
that there is any "common law" rule upon the subject.  At
common law there was no limitation as to time upon the
right to bring a personal action.  Such limitations are and
always have been pure creatures of the statute, and the rule

contended for is a rule which grew up and developed in the construction of the statute of 21st James I, and in no other way. It was first announced in 1781 by Lord Mansfield in Whitcomb v. Whiting, and, while any statement of the law made by that great judge is entitled to great weight and respect, his declarations even as to the common law are simply persuasive authority.

This brings us now to the consideration of our own statute, and before reviewing the authorities construing this and similar statutes, I will examine the statute independently of them. It is quite clear that under the statute no written acknowledgment or new promise howsoever solemnly executed or made by one of two co-debtors could in any measure suspend the running of the statute as to the other, and this would be so whether the acknowledgment or promise was made before or after the statutory bar had attached. This being so, it would seem that inasmuch as the law does not permit one co-debtor by his express promise or acknowledgment to bind the other, it would logically follow that he could not by an act which is simply in legal effect an acknowledgment from which the law implies a promise, bind him. I am unable to escape this conclusion, and it seems to me to be abundantly justified by the authorities.

In 1866 the 24th section of the Code of Ohio was identical with Sec. 21, Ch. 13, Compiled Laws of Wyo. 1876; thereafter the legislature of Ohio adopted a new code, Sec. 4992 of which is identical with our Sec. 2381, R. S. of Wyo. 1887. These sections are set forth in the statement of facts preceding this opinion. In my judgment the two sections are in substance the same; there is no sort of difference in their effect.

In Marienthal v. Mosler, 16 Ohio St., 570, the Supreme Court of Ohio, in construing the 24th section of their code, used this language:

"By comparing this section with the one for which "it is substituted in the limitation act of 1831, and judicial "constructions given to the act of 21 James, it is apparent "that the legislature did not intend to enlarge the facili-

"ties for taking cases out of the statutory bar. Before this.
"can now be effected by an acknowledgment of an existing
"debt or a promise to pay the same, it 'must be in writing,
" 'signed by the party to be charged thereby.' No change
"is made in the effect of a part payment of a debt. It will
"be seen, however, that the same effect is given to such
"part payment as is given to a written promise signed by the
"party to be charged thereby. It would seem therefore from
"analogy, that the payment must be made by the party to be
"affected thereby, or by an agent authorized for that express
"purpose. In the contemplation of the statute, the part
"payment of a debt is regarded as evidence of a willingness
"and obligation to pay the residue, as conclusive as would
"be a personal written promise to that effect. It could not
"then have been intended to give this effect to payments
"other than those made by the party himself or under his
"immediate direction. Surely nothing short of this would
"warrant the assumption of a willingness to pay equal to
"his written promise to that effect."

In Hance v. Hair, 25 Ohio St., 349, it was held under the
same section that "a partial payment on a joint and several
"promissory note by one of the several makers will not prevent
"the running of the statute of limitations as to the other
"makers." And the case of Marienthal v. Mosler, supra, was
expressly affirmed.

In Kerper v. Wood, 48 Ohio St., 613, the statute in exist-
ence and relied upon was sec. 4992, R. S. Ohio, identical with
our section 2381, R. S. Wyo. 1887. The court quoted from
the decisions in Marienthal v. Mosler, supra, and Hance v.
Hair, supra, and say at page 621: "These decisions give
"emphasis to the reason and language of the statute. A pay-
"ment, or acknowledgment or a promise in writing will not
"avail to take a case out of the statutory bar unless made by
"the party to be charged thereby, or by an agent author-
"ized for that express purpose."

It is quite apparent from these decisions from Ohio that
the supreme court of that State regarded the two sections
as the same in substance, and in view of the fact that we

adopted our statute from that State these decisions are entitled at least to more than ordinary weight in the construction of our statute.

In Commonwealth v. Hartnett, 3 Gray, at page 451, it is said that "it is common learning that the adjudged construction of the terms of a statute is enacted as well as the terms themselves, when an act which has been passed by the legislature of one State or country is afterwards passed by the legislature of another."

In Steele v. Souder, 20 Kans., 39, Mr. Justice Brewer delivering the opinion of the court, in construing a statute identical with Sec. 21, Ch. 13, Compiled Laws of Wyo. 1876, uses this language:

"The language may indeed be open to three constructions: "One, that the mere fact of payment, whether by a party to "the instrument or not keeps it alive as to all originally "liable on it: another, that payment by one party keeps it "alive as to all: and, third that payment, like acknowledg-"ment or promise, keeps it alive only as to the party paying. "It seems to us that the latter is the true construction. No "valid reason exists why payment should be more potent "than acknowledgment or promise. Indeed, payment was "treated by the courts as simply an evidence of acknowledg-"ment. Such construction makes the various provisions of "this section not only harmonious with each other, but with "the general provisions of the statutes making each party to "an instrument severally liable thereon. Severally liable, "each should be severally protected. We conclude, then, that "payment suspends the running of the statute only as against "the party making the payment."

I think there is no room to doubt the correctness of the learned Justice's views with respect to the effect of the payment. It is certain that Lord Mansfield made no distinction between the legal effect of a payment and acknowledgment; and such is the generally accepted opinion. It is true that Tindall, C. J., in Wyatt v. Hodson, 8 Bing., 309, attempted to draw a distinction between a payment and "an ordinary acknowledgment;" but however much force there

may be in his remarks when applied to an ordinary oral acknowledgment, I am unable to perceive any in cases where the acknowledgment or new promise is required to be in writing and subscribed by the party.

In Nebraska, the statute was as follows:

"Sec. 22.  In any case founded on contract when any "part of the principal or interest shall have been paid; or "an acknowledgment of an existing liability, debt or claim "or any promise to pay the same, shall have been made in "writing, an action may be brought in such case within the "period prescribed for the same after such payment, acknowl- "edgment or promise."

In Mayberry. v. Willoughby, 5 Nebr., 369, it was held that part payment by one of two joint debtors does not take the case out of the statute as to the other.

In Minnesota, the statute was:

"Sec. 24.  No acknowledgment or promise is sufficient "evidence of a new or continuing contract by which to take "the case out of the operation of this chapter unless the "same is contained in some writing signed by the party to "be charged thereby; but this section shall not alter the "effect of any payment of principal or interest."

In Willoughby v. Irish, 35 Minn., 63, it was held in a well considered case that

"A partial payment upon a promissory note by one of the "joint and several makers thereof and indorsed upon it be- "fore the note is barred by the statute of limitations, and "within six years before suit is brought is inoperative to pre- "vent the running of the statute as to the others."  Syllabus.

In New York the statute is identical with that of Minnesota just quoted.

In McMullen v. Rafferty, 89 N. Y., 456, it was held that payments made by one of two joint and several makers of a note did not prevent the running of the statute as to the other, although the partial payments were made before the statutory bar had attached.

The following cases also hold that payment by one of

two joint obligors does not suspend the running of the statute as to the others:

Bush v. Stowell, 71 Pa. St., 208, at p. 212; Kallmbach v. Dickinson, 100 Ill., 427; In re Sanders Est., 24 N. Y. Sup., 317; Littlefield v. Dingwall, 39 N. W. Rep., 38; Tate v. Clements, 16 Fla., 340; Davis v. Mann, 43 Ill. App., 302.

See also Vol. 1, Part 11, Smith's Leading Cases, page 857, giving note to Whitcomb v. Whiting; Angell on Limitations, 6th Ed., page 269, and note at page 281, et seq.; 3rd Parsons on Conts., 6th Ed., page 79, et seq.; Wood on Limitations, p. 605; United States v. Wilder, 13 Wall., 254; 3rd Kent's Comm., 50.

We have examined with care the cases upon the other side of this question, especially Sigourney v. Drury, 14 Pick., 387; Quimby v. Putnam, 28 Me., 419; Hewlitt v. Schenck, 82 N. C., 234; Moore v. Goodwin, 109 N. C., 218; Moore v. Beaman, 111 N. C., 328; Merritt v. Day, 28 N. J. L., 32; Cox v. Bailey, 9 Ga., 470; McClurg v. Howard, 45 Mo., 365; Perkins v. Barstow, 6 R. I., 505; Woodsochet Ins. v. Ballon, 1 L. R. A. (Rh. I.), 555.

In this last cited case from 1 L. R. A., the Supreme Court of Rhode Island, at page 560, after reviewing the cases in that State, says: "The cases are doubtless at variance with "the rule now generally prevailing in the United States;" and hold that the doctrine is too firmly established in that State to be altered except by a statute.

In the case of Hunter v. Robertson et al., 30 Ga., 479, the court, while holding to the rule declared in Cox v. Bailey, 9 Ga., 467, as to the effect of a payment by one of two joint obligors, refuse to extend the rule so as to affect indorsers or sureties, and express grave doubts as to the correctness of the rule as to joint obligors, and use this language: "But again: If the principle is wrong when applied "to joint makers—and there is no doubt in my mind that it "is—shall we extend it to an indorser on the same fallacious "reasons?"

In the case of McClurg v. Howard, 45 Mo., 365, Judge Bliss, delivering the opinion of the court, and referring to

the case of Shoemaker v. Benedict, 11 N. Y., 176, says: "I "confess it would be very difficult to reply to or resist the "force of the reasoning of Judge Allen, who gave the opin-"ion of a majority of the court in that case; and were the "question a new one in Missouri, I would favor the applica-"tion of its doctrine to the present case, but the question was "expressly decided the other way by this court in Craig v. "Calloway, 12 Mo., 94, and the decision was in accordance "with the authorities at that time." And hence the question was considered as not an open one in Missouri. To the same effect is Campbell v. Brown, 86 N. C., 376, at pp. 380 and 382.

And thus upon examination of the authorities we find not only that the principle here contended for by the plaintiff is denied by the overwhelming weight of authority, but also that in some of the States where it is recognized as the law the courts continue to sustain it solely for the reason that it has been so decided in earlier cases.

The case of Cross v. Allen, 141 U. S., 528, is strongly urged upon us, as being a case which in effect denies the doctrine of Bell v. Morrison, supra. There are some expressions in the case which give some foundation to the contention; but an examination of the case leads me to the conclusion that it was correctly decided for reasons which in no wise conflict with anything said in Bell v. Morrison.

The case arose in the State of Oregon, and the question was whether the payment by a principal suspended the running of the statute as to a surety. Of course this called for a construction of the statute of Oregon. The statute in force was peculiar to that State and Minnesota. In each of those States the statute had been considered by their Supreme Courts and held to mean that payment by any party upon an existing contract after it becomes due had the effect of causing the statute to run as to all the parties, only from the date of the last payment. Whittaker v. Rice, 9 Minn., 14; Partlow v. Singer et al., 2 Ore., 307; Sutherlin v. Roberts, 4 Ore., 378.

In. these cases the peculiarities of the statute are pointed out and commented upon.

We have hereinbefore quoted the present statute of Minnesota. A comparison of that statute with the one existing at the time of the decision in 9 Minn., 14, will show the reasons for the different rulings in that State. See Willoughby v. Irish, 35 Minn., 63. Upon the whole case I am of the opinion that the true construction of our statute, Sec. 2381, R. S. 1887, is that given by the Supreme Court of Ohio in Kerper v. Wood, 48 Ohio St., at page 621, viz.: "A pay-"ment, an acknowledgment or a promise in writing will not "avail to take a case out of the statutory bar unless made by "a party to be charged thereby, or an agent authorized for "that express purpose," and that the judgment of the District Court of the County of Laramie should be in all respects affirmed.

GROESBECK, C. J., and CONAWAY, J., concur.