[No. 2998.  Decided December 30, 1898.]

J. L. STUBBLEFIELD, *Appellant*, v. JAMES McAULIFF *et al., Respondents.*

REVIEW ON APPEAL — REFUSAL TO TRY ACTION PIECEMEAL — LIMITATIONS—EXTENSION BY PARTIAL PAYMENTS—POWER OF HUSBAND TO BIND WIFE.

An order of the trial court overruling a motion for another trial upon issues raised by one of the defendants in a mortgage foreclosure suit will not be disturbed, when it appears that the court deemed the decree entered on the former trial a final one, in which the plaintiff had tacitly acquiesced for a period of ten months, and had perfected an appeal therefrom as a final decree.

Where a note secured by a mortgage of community realty has been executed by a man and wife, payments of principal or interest thereon made by the husband without the authority of the wife after maturity will not extend the time of the running of the statute of limitations as against her.

Appeal from Superior Court, Walla Walla County.— Hon. THOMAS H. BRENTS, Judge.  Affirmed.

*Miles Poindexter,* and *C. M. Rader,* for appellant.

*George T. Thompson,* and *Oscar Cain,* for respondents.

The opinion of the court was delivered by

REAVIS, J.—Action by appellant to recover judgment against respondent James McAuliff on two promissory

notes executed by him, and to foreclose three mortgages executed to secure the notes. The notes were respectively executed payable to the order of Baker & Boyer, and transferred by them to appellant. The principal mortgage, securing one note, was executed by James McAuliff and his then wife, Isabella McAuliff, and the real property included in the mortgage was the community estate of McAuliff and wife. The wife, Isabella McAuliff, died intestate on September 1, 1889, and no administration has been had upon her estate. The respondents, James, Frank and William McAuliff and Anna Clowe, are the children of James McAuliff and wife Isabella, deceased. James McAuliff made various payments on the note more than six years after its maturity. Some of these payments were made while his wife was living, and others after her death. There is no contention that Isabella McAuliff authorized any of the payments made after the maturity of the note. The respondents, children of James and Isabella McAuliff, answered the complaint, claiming as the heirs of Isabella McAuliff, deceased, an undivided one-half interest in the real property described in the mortgage, free from the lien of the mortgage, and set up the statute of limitations against the note and mortgage. Upon the issues so made between appellant and the heirs of Isabella McAuliff, the cause proceeded to a final decree in April, 1897. The superior court adjudged the heirs of Isabella McAuliff the owners of the undivided one-half interest in the community estate which had been mortgaged, and sustained the plea of the statute of limitations. Several other defendants were made parties to the action by plaintiff (appellant), but none appeared and answered, except the London & San Francisco Bank, which merely denied upon information and belief the execution and validity of the mortgage, and affirmatively stated that it had docketed a judgment against James McAuliff, without specifying the

date of the entry thereof, and that the mortgage was void as against law, but made no specification of illegality. The allegation of the complaint was that the bank claimed a lien upon the mortgaged premises, but that such lien was junior and inferior to the mortgage. No further notice seems to have been given by plaintiff, or any of the parties to the action, to the controversy between plaintiff and the bank. Upon the entry of judgment in April, 1897, the plaintiff (appellant) duly perfected an appeal to this court and transferred the record of the cause here. In November, 1898, plaintiff moved the court to set down for trial the issues between himself and the bank, which motion the court overruled upon the ground that a final decree had been entered in the cause some ten months previously. From the order overruling the motion, appellant gave notice of appeal to this court, and now assigns the overruling of such motion as error.

1. It is not right to disturb the order of the superior court overruling the motion for another trial upon the issues between the plaintiff and the bank. A considerable time had elapsed after a decree had been entered which was evidently deemed final by the court, in which finality the plaintiff tacitly acquiesced, and which decree the plaintiff treated as final by perfecting an appeal therefrom; and plaintiff may fairly be deemed to have waived further controversy in the action between himself and the bank.

2. The important question presented here is upon the statute of limitations of this state, § 4817, Bal. Code (2 Hill's Code, § 132), which reads:

" When any payment of principal or interest has been or shall be made upon any existing contract, whether it be a bill of exchange, promissory note, bond, or other evidence of indebtedness, if such payment be made after the same shall have become due, the limitation shall commence from the time the last payment was made."

Upon the note executed by James McAuliff in 1880 and secured by the mortgage executed by himself and wife, Isabella McAuliff, payments had been made by James McAuliff at such intervals, both during the life time of Isabella McAuliff and after her death, that the full period of six years did not elapse between the accruing of the cause of action and the first payment, or between any two payments; and appellant maintains that such payments prevent the bar of the statute in favor of Isabella McAuliff and her heirs. Respondents, the heirs, maintain that, without the express authority of Isabella McAuliff, the payments made by James McAuliff could not inure against them.

The leading authority cited by counsel for appellant is *Cross v. Allen,* 141 U. S. 528 (12 Sup. Ct. 67). The opinion in that case was delivered by Mr. Justice LAMAR. The case came from the state of Oregon, under a statute of limitations somewhat variant from ours, and which had already been construed by the Oregon courts (*Partlow v. Singer,* 2 Ore. 307; *Sutherlin v. Roberts,* 4 Ore. 378). The supreme court of Oregon had determined such statute made the payment upon the note after maturity by one joint obligor bind the co-obligor or surety, and the question before the supreme court of the United States was the declaration of the effect of the state law as construed by the supreme court of the state. The learned justice delivering the opinion, however, seemed to regard the Oregon statute as only declaratory of the common law, and based the decision apparently on that ground; adopting the views expressed by Lord Mansfield in the leading case of *Whitcomb v. Whiting,* 2 Doug. 652, and other cases following the doctrine enunciated in that case.

In *Bergman v. Bly,* 66 Fed. 40, a case before the United States circuit court, involving the construction of the Wyoming statute, Judge Caldwell, referring to *Cross v.*

*Allen, supra,* said that the supreme court did no more than apply the rule of the local law, and intimated that the remarks in the opinion upon the general question were not binding upon the federal courts, and did not correctly lay down the rule of construction for statutes like that of Wyoming, which is the same as in this state, and that it was the duty of the federal courts to follow the construction given to the state statutes of limitation by the state courts. In *Cowhick v. Shingle,* 5 Wyo. 87 (37 Pac. 689, 63 Am. St. Rep. 17), the whole question is discussed and the following reference made to *Cross v. Allen:*

" The case arose in the state of Oregon, and the question was whether the payment by a principal suspended the running of the statute as to a surety. Of course this called for a construction of the statute of Oregon. The statute in force was peculiar to that state and Minnesota. In each of those states the statute had been considered by their supreme courts and held to mean that payment by any party upon an existing contract after it becomes due had the effect of causing the statute to run as to all the parties, only from the date of the last payment. *Whittaker v. Rice,* 9 Minn. 14; *Partlow v. Singer,* 2 Ore. 307; *Sutherlin v. Roberts,* 4 Ore. 378. In these cases the peculiarities of the statute are pointed out and commented upon. We have hereinbefore quoted the present statute of Minnesota. A comparison of that statute with the one existing at the time of the decision in 9 Minn. 14, will show the reasons for the different rulings in that state. See *Willoughby v. Irish,* 35 Minn. 63."

But the supreme court of the United States in the earlier case of *Bell v. Morrison,* 1 Pet. 351, elaborately reviews both the English and American cases, and repudiates the doctrine of *Whitcomb v. Whiting,* 2 Doug. 652. The opinion is by Mr. Justice STORY, and he assumes that that case, which was decided in 1781 and after severance of the relations of the colonies with the mother country, is neither an authoritative declaration of the common law

which was brought to this country before the revolution, nor a correct exposition of that law at the time it was adopted by the colonies as it had been declared in the English courts up to that time. He observes:

" Now, what is a new promise but a new contract? a contract to pay, upon a pre-existing consideration, which does not, of itself, bind the party to pay, independently of the contract. . . . The acknowledgment, if it is to operate at all, is to create a new cause of action, . . . and thus to give an action which has its life from the new promise implied by law from such an acknowledgment, and operating and limited by its purport. It is, then, in its essence, the creation of a new right, and not the enforcement of an old one. We think that the power to create such a right does not exist after a dissolution of the partnership in any partner."

The same conclusion was also reached in the same court in *Clementson v. Williams,* 8 Cranch, 72, and *United States v. Wilder,* 13 Wall. 254. In *Van Keuren v. Parmelee,* 2 N. Y. 523 (51 Am. Dec. 322), there is an elaborate consideration of the effect of the payment by one joint debtor, and that eminent court expressly refused to follow the case of *Whitcomb v. Whiting.* Judge BRONSON, delivering the opinion of the court, observes:

" The case of *Whitcomb v. Whiting* has been several times questioned in England, and in *Atkins v. Tredgold* (2 B. & C. 23), the court seemed much disposed to disregard it. But the authority of a great name has proved more than a match for common sense; and the decision in Douglass is now regarded as good law in England. . . . But it is not so in this country. Although the case in Douglass has been followed in some of the states, it has been questioned in others; and in several of the states and by the supreme court of the U. S. it has been wholly disregarded."

He adds that he is persuaded such a decision would not have been made, had it not been for the strong disposition

which prevailed at that time to get round the statute of limitations. It was in direct conflict with *Bland v. Haselrig,* 2 Ventris, 151, which was decided ninety years before. The same view is taken in *Lane v. Doty,* 4 Barb. 530. 13 Am. & Eng. Enc. Law, p. 763, states that *Whitcomb v. Whiting* is followed in some of the United States, citing cases from Connecticut and Maine, Massachusetts and Vermont. But in most of the United States it is expressly repudiated, citing cases from many other states in the Union. In addition to those cited in the list the following are in point: *Tate v. Hawkins,* 81 Ky. 577 (50 Am. Rep. 181); *Bender v. Blessing,* 31 N. Y. Supp. 481; *Littlefield v. Littlefield,* 91 N. Y. 203 (43 Am. Rep. 663); *Miller v. Magee,* 2 N. Y. Supp. 156; *Stoker v. Patton,* Tex. Civ. App. (35 S. W. 64); *Boynton v. Spafford,* 162 Ill. 113 (44 N. E. 379, 53 Am. St. Rep. 274); *Drake v. Stuart,* 87 Iowa, 341 (54 N. W. 223); *Rogers v. Anderson,* 40 Mich. 290; *Mayberry v. Willoughby,* 5 Neb. 368 (25 Am. Rep. 491); *Tate v. Stevenson,* 55 Mich. 320 (21 N. W. 348).

The rule enunciated by the later cases is that part payment by one person, being equivalent to a new contract based upon an old consideration, upon which a cause of action accrues at the time of the payment, binds only the person making the payment, or one whom he has authority to bind by a new contract to pay the balance. The position of the McAuliff heirs is fairly stated in *Bank of Albion v. Burns,* 46 N. Y. 170, as follows:

" The property of the wife having been mortgaged to secure the debt of her husband, she occupied the position of a surety, with all the rights, legal and equitable, incident to that relation; and the defendants having succeeded, by inheritance, to the estate and interest of their mother, occupy the same position, and are entitled to every defense which could have availed to the original mortgagor had she lived. . . . The wife, and those claiming under

her, are entitled to the benefit of the rules prohibiting all dealings of the creditor with the principal debtor to the prejudice of the surety."

Also the principle is discussed in *McCollum v. Boughton,* 132 Mo. 601 (34 S. W. 480) ; *Wilmer v. Gaither,* 68 Md. 342 (12 Atl. 8) ; *Lord v. Morris,* 18 Cal. 482 ; *Grattan v. Wiggins,* 23 Cal. 16.

The distinction which was the basis of the decision in *Cross v. Allen, supra,* between payment made before and after the bar of the statute has attached, is, as observed in *Willoughby v. Irish,* 35 Minn. 63 (27 N. W. 379, 59 Am. Rep. 297), founded upon no principle.  Authority to make the new contract, or authority to extend or revive the liability, is essential to its validity, and it is just as unreasonable to assume it in the one case as in the other; and the distinction has been expressly repudiated by a large number of the courts.  It is clear that, under the section of our statute requiring a new promise to be in writing in order to revive or continue the obligation, one of two codebtors could not make such promise for the other without express authority, whether the acknowledgment or promise was made before or after the statutory bar had attached; and it is equally apparent, upon principle, that the same rule controls in payments upon an existing obligation.

The superior court's construction of the statute of limitation is, therefore, approved.  Other minor objections to the judgment have been examined, but we do not deem them sufficient to warrant a modification of the judgment or reversal of the cause, and the judgment is, therefore, affirmed.

SCOTT, C. J., and DUNBAR, ANDERS and GORDON, JJ., concur.