## F. R. HARRIS v. BYRON O. CLARK.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED DECEMBER 12, 1907.    DECIDED JANUARY 29, 1908.

HARTWELL, C.J., WILDER AND BALLOU, JJ.

STATUTE OF LIMITATIONS—*evidence of new promise.*

In an action of assumpsit in order to remove the bar of the statute of limitations the evidence must show, which it does not in this case, either an express promise or an unqualified and direct admission of debt which the party is liable and willing to pay, without accompanying circumstances which repel the presumption of a promise.

OPINION OF THE COURT BY WILDER, J.

This is an action of assumpsit, the defense being the statute of limitations. Defendant executed a promissory note in favor of plaintiff at Pasadena, California, on June 7, 1897, payable in one year. The action was begun in the circuit court on August 16, 1906, which court, after a trial jury waived, gave judgment for plaintiff, and defendant comes to this court on exceptions which raise the sole question of whether the evidence shows a new promise so as to take the case out of the statute of limitations.

The evidence relied on to show a new promise consists of two letters written by defendant and conversations between defendant and plaintiff's attorney.

The letters are as follows:

"Honolulu, June 19, 1905.

"Mr. F. R. Harris,
        "Pasadena, Cal.
"Dear Sir:

"I enclose herein a letter which comes as a great surprise to me, if as it states you have placed my note for 'immediate' collection without ever writing me a line.

"Now friend Harris, there has never been a day since that note was given you, that I have not fully intended and expected to pay you, also there has not yet come the time when I could do so. I wrote Mr. Stuart offering to give him some securities that Mrs. Clark had in part payment of his claim and told him I would do the same for you, we have not yet done so as we did not get matters in shape so we could, but we have been struggling along developing Mrs. Clark's Gov. homestead, and believe that we can begin paying old claims another year, and will do so as soon as we can. You know the condition I came here under not a cent to start with, and necessarily have had to go in debt while making a start for our living expenses, &c, these we are paying up and must pay before money can be had to pay old accts of mine, all our landed property here belongs to Mrs. Clark and it is to be kept for a home, but she is willing, as soon as we can begin to get an income from the property, to help out on my old debt, and will do so to those who deserve it. I have been badgered and hampered by old Cal. crs. who evidently do not wish me to get on my feet, and I have often thought of your advice to me—before I left Cal. to go through bankruptcy, but you know I declined to do so and have been steadfast against it, but when you, whom I have always considered one of my best friends, to push me now, that I can see some hope of getting out of debt with my wife's assistance, and soon be able to pay you as well as others, makes me feel as if I will not struggle any longer against the fate of a debtor, but take advantage of the law which in itself is 'just' but so often abused. I can assure you Mr. Harris if I am left alone I will come out all O. K. but I am not going to pay lawyers, fighting old claims much longer. J. L. Howland of Pomona has been dogging me for three or four years and now has a judgment entered up against me here. I told him as I am telling you if I had a chance I would come out alright and pay him, but if he insisted on settling the matter by law he would have to take legal settlement—not moral. Enforcement of these old claims do no one good and only are an injury to me and I ask you to write me a letter why it is you have taken this course and if you will not reconsider your action.

"I have never had a word from you since coming over here about the debt, and I have not written you about the matter as I placed implicit confidence in 'your' confidence in me. When

you advised me to go through bankruptcy, and said you had faith in me, that I would pay you when I could, it made me feel as if there was yet something keeping up the fight for, at a time when I was about to break down physically from the years of trial I had gone through. I hope, though so long deferred in coming up to your expectations, that you have not lost faith in me just as I am getting where I can see some chance of redeeming that confidence.

"Let me hear from you personally in this matter, if I can arrange matters in any way to secure you I am willing to do so, if I may have time to fix it up in a friendly manner, but I shall not ask Mrs. Clark to sacrifice any more to pay my old debts. She gave up all she had in Cal. but she is getting too old to work as we both have in the past, and I will not draw on anything but the earnings of her property again and this will be ample if it is kept in shape for another year or so.

"Yours truly,
"Byron O. Clark."

"Honolulu, T. H., June 25th, 1906.
"H. G. Middleditch,
"Honolulu, T. H.
"Dear Sir:

"I am in receipt of yours of the 15th and 23rd inst., both on the same day, your former letter having been delayed in reaching my hands, or you should have heard from me sooner. I note what your clients have to say and I have offered all that it is possible for me to do. Mr. Harris received in California before I left there the larger portion of my indebtedness to him from Mrs. Clark's resources, of which I have not been able to repay her up to this time. It is impossible for me to pay 20% and a year's interest in advance and I cannot ask my wife to join me in any indebtedness on my account. She stands ready to assist me from any income that she may have, but both she and myself sacrificed everything we had to pay our debts as far as possible before leaving California and have been paying whenever it has been possible for us to do so, since coming here. I am willing to do anything I can to pay Mr. Harris as soon as I can, but cannot accede to the terms laid down in your letter of the 15th inst.

"Yours truly,
"Byron O. Clark."

The testimony of plaintiff's attorney, Mr. Middleditch, is as follows:

"Between the receipt of the letter first introduced in evidence and the receipt of the last letter introduced I had several conversations with Mr. Clark relative to this claim and at no time did Mr. Clark deny his liability in the matter. He on two occasions offered to make settlement of the claim. About the 8th of August, 1905, Mr. Clark called at my office and agreed * * * Mr. Clark called at my office and we again talked over the matter of this note * * * 8th day of August, 1905; and at that time he stated in words substantially as follows:— 'Regarding this note—I expect to be able to pay something on account within ninety days and if I cannot will give ample security belonging to my wife who is on the coast, it will take about four weeks to hear from her.' I quote from a minute I took at the time of the conversation and which I wrote to my client: 'On or about the 22d day of May, 1906, Mr. Clark called at my office and in a conversation relative to the note said that he would be willing * * * to give a note for the sum of $574.75, the amount of the note and interest due in about four months and give as security for the payment of the note, ten shares of Tropical Fruit Company stock.' This proposition I placed before my client and the same was refused. Upon the receipt of a letter from my client refusing this proposition I wrote Mr. Clark to which he replied by the letter Exhibit D, the last exhibit."

There are numerous decisions of state courts, particularly among the earlier cases, in which language substantially like that used by the defendant in this case has been held sufficient evidence of a new promise. Some of these cases, however, though cited as general authorities, are based upon statute, many codes providing that a mere acknowledgment of an existing liability or debt is sufficient to remove the bar of the statute of limitations. *Devereaux v. Henry,* 16 Neb. 55, 19 N. W. 697. Other cases, while following previous decisions, have expressed disapprobation of the rule originally adopted for taking cases out of the statute of limitations. *Horner v. Starkey,* 27 Ill. 13; *Olcott v. Scales,* 3 Vt. 173.

The United States supreme court, however, at an early date took a decided stand in favor of giving full effect to the prohibition of the statute. In 1832, referring to a still earlier case, the court said:

"This court in the case of *Clemenston v. Williams,* 8 Cranch 72, nearly twenty years since, expressed a very decided opinion, that courts had gone quite far enough in admitting acknowledgments and confessions to bar the operation of the statute of limitations, and that this court was not inclined to extend them; that the statute was entitled to the same respect as other statutes, and ought not to be explained away. And from the course of decisions in the state courts, as well as in England, such seems to have been the general impression; and they have been gradually returning to a construction more in accordance with the letter, as well as the spirit and intention of the statute." *Moore v. Bank of Columbia,* 6 Pet. 86, 92.

In the case of *Bell v. Morrison,* 1 Pet. 351, 361, Mr. Justice Story laid down the rule which has become the accepted standard in the federal courts and has been widely cited and adopted elsewhere:

"If the bar of the statute is sought to be removed by the proof of a new promise, that promise, as a new cause of action, ought to be proved in a clear and explicit manner, and be, in its terms, unequivocal and determinate; and if any conditions are annexed, they ought to be shown to be performed. If there be no express promise, but a promise is to be raised by implication of law, from the acknowledgment of the party, such acknowledgment ought to contain an unqualified and direct admission of a previous, subsisting debt, which the party is liable, and willing, to pay. If there be accompanying circumstances, which repel the presumption of a promise or intention to pay; if the expressions be equivocal, vague and indeterminate, leading to no certain conclusion, but at best to probable inferences, which may affect different minds in different ways; we think they ought not to go to a jury as evidence of a new promise, to revive the cause of action."

See also *Wetzell v. Bussard,* 11 Wheat, 309; *Shepherd v. Thompson,* 122 U. S. 231. From these cases it seems to be established that, in order to remove the bar of the statute, there

must be, in addition to an admission of a subsisting debt, either an express promise to pay, or circumstances from which an implied promise may be presumed, which must be clear and definite and not conditional nor by way of compromise or attempt at settlement.

Even where there is no difference as to the principles which should be adopted, the language used by the defendant in each particular case frequently produces different impressions on different minds, and these cases are the prolific source of dissension. The nicety of distinction upon which cases finally turn is well illustrated by two English cases. In *Fearn v. Lewis,* 6 Bing. 349, the language was, "Mr. Fearn's claim, with that of others, shall receive that attention that as an honorable man I consider them to deserve, and it has been and is my intention to pay them. I cannot conclude without saying, I must be allowed time to arrange my affairs; and if I am proceeded against, any exertion of mine will be rendered abortive." This language, which is in many respects similar to that used in the case at bar, was held insufficient to take the case out of the statute. In *Chasemore v. Turner,* L. R. 10 Q. B. 500, the language was, "The old account between us which has been standing over so long has not escaped our memory, and as soon as we can get our affairs arranged we will see you are paid; perhaps in the meantime you will let your clerk send me an account of how it stands." The Exchequer Chamber, reversing the Queen's Bench, with dissenting judges in both courts, held this sufficient evidence of a promise.

In the case at bar, although the matter is not free from difficulty, we are of the opinion that the evidence is not sufficient to show a new promise within the principles stated.

In his first letter to plaintiff defendant starts in by expressing his surprise at plaintiff's placing the note for collection without writing him and then says, "there has never been a day since that note was given you that I have not fully intended and expected to pay you," the effect of which is taken away by

the succeeding words, "also there has not yet come the time when I could do so." Then follows a reference to a third party's claim and a belief that "we can begin paying old claims another year and will do so as soon as we can." Whatever effect this last clause standing alone might have in showing a new promise is taken away by the balance of the letter, which shows that such was not the intention. Defendant then describes the difficulties with which he and his wife have had to contend in making a living and attempting to get ahead since arriving in this Territory, followed by a statement that he expects to come out all right if left alone. Reference is made to the fact that it might have been better if defendant had gone through bankruptcy, coupled with an intimation that at law the plaintiff will "have to take a legal settlement—not moral," and an appeal is made to plaintiff to have time to "fix it up in a friendly manner." Defendant winds up the letter with the statement that he would not ask his wife to sacrifice any more of her property to pay his old debts.

The next in order are the conversations between defendant and the plaintiff's attorney to the effect that defendant at no time denied liability and that on two occasions he offered terms of settlement. The fact that defendant did not deny liability is clearly insufficient to show a new promise. The two offers of settlement, one made in August, 1905, and the other in May, 1906, are also insufficient to show a new promise for the reason that neither one was accepted.

The only other evidence is another letter of defendant written to plaintiff's attorney about a year later than the first one. In this defendant definitely states, "I have offered all that is possible for me to do," which is consistent with the theory that in the previous conversations and letter he had done nothing more than attempt a compromise. The last letter shows that defendant is unable to do anything more.

In discussing the somewhat similar language of *Fearn v. Lewis,* quoted above, the court, in the subsequent case of *Chase-*

*more v. Turner,* uses language applicable to the evidence above cited. "It imports an assertion of present inability to pay, but an intention (which may be something more than hope but which would not necessarily amount to a promise) to pay if the affairs are put right, and if, in fact, there is an ability to pay. There is a doubt, to say the least, if not an absolute assertion of present inability, and an intention of paying if time be given—a conditional intention, and a conditional intention depending upon the circumstances of a man who admits at least, to take it as fairly as it can be taken, that at present he is unable to pay." *Chasemore v. Turner,* L. R. 10 Q. B. 500, at 514. The case of *Chasemore v. Turner* was distinguished on the ground that the present inability to pay, a circumstance much relied on as rebutting any implied promise, did not clearly appear, whereas in the case at bar the language is much stronger in this respect than in *Fearn v. Lewis.* We are therefore of the opinion that these letters and conversations, whether taken singly or as a whole, are not sufficient to show a new promise. At the most the expressions are "equivocal, vague and indeterminate, leading to no certain conclusion, but at best to probable inferences which may affect different minds in different ways," which, as shown above, are not enough.

Exceptions sustained, judgment vacated.

*H. G. Middleditch* for plaintiff.

*S. B. Kingsbury,* (*Kingsbury & Kellogg* on the brief,) for defendant.