## JOHN MACAULAY *v.* F. SCHURMANN AND L. McMANUS.

### ERROR TO CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED MAY 13, 1914.                    DECIDED MAY 29, 1914.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

BILLS AND NOTES—*statute of limitations—payment by co-maker.*

The payment of interest by one of two joint and several makers of a promissory note within the period of limitation will start the statute of limitations to run afresh as to the other, as well as the one who made the payment, though the payment was made without the knowledge or authorization of the other.

Macaulay v. Schurmann, 22 Haw. 140.

OPINION OF THE COURT BY ROBERTSON, C. J. -

(Quarles, J., Dissenting.)

In an action of assumpsit upon a promissory note the defendant-in-error, who was the plaintiff below, recovered a judgment which the plaintiff-in-error, Schurmann, seeks to have reversed. The note, which was for $500, was the joint and several one of the plaintiff-in-error and one McManus, executed in California on September 18, 1907, and due six months after date. The defense was the statute of limitations. Payments endorsed on the note were as follows: January 15, 1908, interest to December 18, 1907, $10; April 6, 1909, interest to February 18, 1909, $52; January 7, 1911, interest to January 3, 1911, $84.39; January 7, 1911, on account of principal, $15.61; August 20, 1911, interest to April 3, 1911, $9.66. The first payment of interest was made by the plaintiff-in-error, who, a few months later, left California and arrived in Hawaii in July 1908. The other payments were made by McManus without the knowledge or authorization of the plaintiff-in-error, though the latter had supposed that McManus had paid the note. The action was commenced on September 23, 1912.

The question to be determined is the much discussed one as to whether a payment made by one joint obligor on account of the principal or interest on a debt will start the statute of limitations to run afresh as to a co-obligor. Our statute provides that actions for the recovery of any debt founded upon any contract, obligation or liability, excepting such as are brought upon the judgment or decree of some court of record, shall be commenced within six years next after the cause of action accrued (R. L. Sec. 1971) but that where the cause of action has arisen in any foreign country action upon it shall be commenced within four years after it accrued (R. L. Sec. 1976). The action against Schurmann, therefore, was barred unless the payments made by McManus served to toll the statute. "Payment of interest is, of course, evidence that the

principal is owing up to the date to which the interest is reck-
oned." *Warren* v. *Nahea,* 19 Haw. 382, 384.

In *Whitcomb* v. *Whiting,* 2 Douglas 652, decided in 1781,
it was held that in the absence of fraud payment of interest by
one of several makers of a joint and several promissory note
takes it out of the statute of limitations as against the others,
Lord Mansfield saying "Payment by one is payment for all,
the one acting, virtually, as agent for the rest; and in the
same manner, an admission by one is an admission by all; and
the law raises the promise to pay, when the debt is admitted
to be due." That case was criticized by Lord Ellenborough
in *Brandram* v. *Wharton,* 1 Barn. & Ald. 463, though he admit-
ted its authority, and it remained the accepted rule in England
until changed by statute. *Burleigh* v. *Stott,* 8 B. & C. 36;
*Wyatt* v. *Hodson,* 8 Bing. 309. Lord Tenterden's Act, passed
in 1828, limited the effect of written acknowledgments and
new promises to the parties making them, and contained the
proviso that "nothing herein contained shall alter or take away
or lessen the effect of any payment of any principal or interest
made by any person whatsoever." The rule as to payments
was completely changed however by the Mercantile Law Amend-
ment Act of 1856 (19 and 20 Vict. c. 97) which provided that
no co-contractor or co-debtor, whether bound jointly only or
jointly and severally with others, shall lose the benefit of the
statute of limitations so as to be chargeable by reason only of
the payment of any principal or interest by another or others of
such co-contractors or co-debtors. Of the early decisions in this
country some followed the rule laid down in *Whitcomb* v.
*Whiting* while others repudiated it as being unsound. In
Wood on Limitations (3d ed.), Sec. 285, it is said that "The
doctrine of *Whitcomb* v. *Whiting,* that an acknowledgment,
new promise, or payment, made by one of two or more joint
contractors, will remove the statute bar as to all, has practically
but little force at the present day, as in many of the States
the legislature has expressly overridden it by providing that

Macaulay v. Schurmann, 22 Haw. 140.

no acknowledgment, promise or part payment made by one joint debtor shall deprive the others of the benefit of the statute; while in others the same result is practically reached by a provision that no acknowledgment or promise shall be sufficient to revive a debt, unless it is made in writing, under the hand of the party to be charged thereby; and in others, the courts, without any express legislation, have repudiated the doctrine as unsound, predicated upon erroneous reasoning, and opposed to the spirit of these statutes. Especially is this the case in New Hampshire, Pennsylvania, Tennessee, Kansas, Florida, Maryland, Illinois, and by the United States Supreme Court; while in Connecticut, New Jersey, Rhode Island and Delaware the doctrine of *Whitcomb* v. *Whiting* is still adhered to. It is not necessary to discuss the accuracy of this doctrine, as it has been attacked and also sustained by some of the ablest judges in this country; and the judgment of the profession, as well as of the people generally, as to the wisdom of the doctrine is best evidenced by the circumstance that it has been nearly obliterated by legislative and judicial action." In a note the author names thirty-two States in which the law has been settled by statutory enactment. The United States Supreme Court case referred to by the author is that of *Bell* v. *Morrison*, 1. Pet. 351. The case arose in Kentucky, and the question was whether the acknowledgment of a debt by one partner, after a dissolution of the copartnership, was sufficient to take the case out of the statute of limitations as to the other partners. It was held that it was not. Mr. Justice Story, delivering the opinion, said that Lord Mansfield's reasoning in *Whitcomb* v. *Whiting* was "certainly not very satisfactory;" he pointed out that the "English cases decided since the American revolution, are, by an express statute of Kentucky, declared not to be of authority in their courts;" that in Kentucky the question was "quite open to be decided upon principle;" that a review of the Kentucky decisions led to "the most serious doubts, whether the state courts of Kentucky

would ever adopt the doctrine of *Whitcomb* v. *Whiting;*" and concluded by saying that "this opinion thus expressed is not unanimous, but of the majority of the court; and as it is apparent, from the preceding reasoning, it has been principally, although not exclusively, influenced by the course of decisions in Kentucky upon this subjcet." In the case at bar, however, we are confronted by section 1 of the Revised Laws providing that "The common law of England, as ascertained by English and American decisions, is hereby declared to be the common law of the Territory of Hawaii in all cases, except as otherwise expressly provided by the Constitution or laws of the United States, or by the laws of the Territory of Hawaii, or fixed by Hawaiian judicial precedent, or established by Hawaiian usage." On behalf of the plaintiff-in-error it is contended that the trend of cases heretofore decided by this court is such as to require us to adopt the modern doctrine, but we find no case in our reports which can be regarded as a precedent in the decision of the question involved here. The legislature of this Territory having seen fit not only not to pass a statute such as has been enacted in England and so many of the States but to expressly enact the common law (with exceptions which do not apply here) we have no option but to apply the rule of the common law. In ascertaining what the common law is we are to consult American as well as English decisions. *Ena Estate* v. *Ena*, 18 Haw. 588, 591. And, as pointed out in *Dole* v. *Gear*, 14 Haw. 554, 561, the common law consists of principles and not of set rules and admits of different applications under different conditions, but none of the considerations referred to by Chief Justice Frear as reasons for preferring the modern view to the old one on the question there discussed apply here. The English act of 1856 is, of course, too recent to be regarded as a part of the common law. *In re Frank B. Craig*, 20 Haw. 447, 450. In *Cowhick* v. *Shingle*, 5 Wyo. 87, 95, the court said "As a rule the term 'common law' means both the common law of England as opposed to statute or written law, and the

statutes passed before the emigration of the first settlers of
America. And applying this definition to the matter in hand,
I am unable to perceive that there is any 'common law' rule
upon the subject. At common law there was no limitation as
to time upon the right to bring a personal action. Such limi-
tations are and always have been pure creations of the statute,
and the rule contended for is a rule which grew up and devel-
oped in the construction of the statute of 21st. James 1, and
in no other way. It was first announced in 1781 by Lord
Mansfield in *Whitcomb* v. *Whiting,* and, while any statement
of the law made by that great judge is entitled to great weight
and respect, his declarations even as to the common law are
simply persuasive authority." We are unable to take that view
of the matter. The decision in *Whitcomb* v. *Whiting* did not
turn upon the construction of the statute of limitations but
upon a principle of the law of contracts. That this is so appears
from the discussions in cases in which Lord Mansfield's rea-
soning has been disapproved. Thus, in *Bell* v. *Morrison, supra,*
Justice Story said "It assumes that one party who has author-
ity to discharge has, necessarily, also authority to charge the
others; that a virtual agency exists in each joint debtor to pay
for the whole; and that a virtual agency exists, by analogy,
to charge the whole. Now, this very often constitutes the mat-
ter in controversy. It is true, that a payment by one does
inure for the benefit of the whole; but this arises not so much
from any virtual agency for the whole, as by operation of
law; for the payment extinguishes the debt. * * * A person
may well authorize the payment of a debt for which he is now
liable; and yet refuse to authorize a charge, where there at
present exists no legal liability to pay. Yet, if the principle
of Lord Mansfield be correct, the acknowledgment of one joint
debtor will bind all the rest, even though they should have
utterly denied the debt, at the time when acknowledgement
was made." 1 Pet. 368. See also *Van Keuren* v. *Parmelee,*
2 N. Y. 523, 527. And so in the case at bar, although the

ultimate question to be decided is whether the defense of the statute of limitations can be sustained, the determination of that question depends entirely upon the preliminary but vital question as to whether in contemplation of law the payments which were made upon this note by McManus amounted to an acknowledgment of or a promise to pay the debt by the plaintiff-in-error, for if the law is that a payment by one maker of a promissory note affects his co-maker to such extent then the defense relied on has failed. The latter question is one of contract—of agency—and obviously does not involve the construction or application of any provision of our statute of limitations. It seems to be generally conceded that *Whitcomb* v. *Whiting* determined the common law on the subject. In *Brown* v. *Hayes,* 146 Mich. 474, 476, the court said "At the common law, according to the weight of authority, a payment by one jointly bound was, unless the statute established a contrary rule, sufficient to prevent the running of the statute. The leading case is *Whitcomb* v. *Whiting,* 2 Doug. 652. This was followed in *Wyatt* v. *Hobson,* 8 Bing. 309, which latter case was cited by Mr. Justice Cooley in *Mainzinger* v. *Mohr,* 41 Mich. 685, as establishing the common law rule first enunciated in *Whitcomb* v. *Whiting.*" And in *Cross* v. *Allen,* 141 U. S. 528, 535, the court said "At common law, a payment made upon a note by the principal debtor before the completion of the bar of the statute, served to keep the debt alive, both as to himself and the surety. * * * This is the rule in many of the States of this Union—in all, in fact, where it has not been changed by statute."

However much we may prefer the rule prescribed by modern legislation, we hold that the common law rule must control and that the payments of McManus which were made within the period of limitation prevented the statute from running in favor of the plaintiff-in-error.

Macaulay v. Schurmann, 22 Haw. 140.

Judgment affirmed. ·

*J. Lightfoot* for plaintiff-in-error.

*Holmes, Stanley & Olson* for defendant-in-error.

### DISSENTING OPINION OF QUARLES, J.

Being unable to agree with the reasoning and conclusion of my associates, it is my duty to set forth the reasons which prevent me from so doing.  The majority opinion is based upon the idea that one of two joint obligors is the agent of the other for the purpose of all things connected with the obligation common to both, and may, expressly or impliedly make a new contract binding both, renewing or continuing the old obligation; that part payment of one, even though made without the knowledge, consent, or express authorization of the other, is an acknowledgment of the debt, and that from this acknowledgment the law implies a promise on the part of both, to pay the balance of the debt.  Much discussion has been had in regard to the cause of action in such cases, but the settled rule is that in assumpsit upon an obligation upon which an action has not been brought within the statutory period, but upon which the bar has been removed or suspended by a new promise, that the action must be upon the new promise.  This new promise is either express, as where the debtor makes a new promise to pay; or it is implied, as where the debtor by unequivocal acknowledgment admits the existence of the debt, and his liability therefor, in which case the law implies a promise on his part to pay.  Part payment is universally held to be such an acknowledgment as to justify the implication of a new promise, unless it is made under such circumstances as repel the presumption.  The English statute adopted early in the seventeenth century (James I, c. 16) limiting the time within which certain personal actions could be brought, was, at first, interpreted and enforced by the English courts in accord with its letter and intent.  Later the statute grew into disfavor, and the

English courts seized upon every possible pretext to take cases out of the statute and thereby avoid the operation of the statute. Such was the condition in England at the time of the decision in *Whitcomb* v. *Whiting*. That decision resulted in so much fraud and hardship, that long prior to the adoption of the English common law in Hawaii, Parliament was forced to enact legislation abolishing the rule announced by Lord Mansfield in that case. It has for many years, both prior and subsequent to January 1, 1893, been the settled policy of our courts to give force and effect to the statute, and to regard it as a statute of repose perforce of which a cause of action was destroyed, unless brought within the prescribed time, or unless there has been a new promise within the prescribed time which will support the action. In *Bell* v. *Morrison*, 1 Pet. 351, this policy is well stated, and the American rule which gives force and effect to the statute of limitations, and frowns upon evasions of it on technical grounds, is well illustrated. The decision in *Whitcomb* v. *Whiting* was condemned, its reasoning shown fallacious, and a rule contrary thereto was announced in the last named case by the Supreme Court of the United States. The court there said, referring to the decision of Lord Mansfield in *Whitcomb* v. *Whiting*: "This is the whole reasoning reported in the case, and is certainly not very satisfactory. It assumes, that one party, who has authority to discharge, has, necessarily, also authority to charge the others; that a virtual agency exists in each joint debtor to pay for the whole; and that a virtual agency exists, by analogy, to charge the whole. Now this very position constitutes the matter in controversy. It is true, that a payment by one does inure for the benefit of the whole; but this arises not so much from any virtual agency for the whole, as by operation of law; for the payment extinguishes the debt. If such payment were made, after a positive refusal or prohibition of the other joint debtors, it would still operate as an extinguishment of the debt, and the creditor could no longer sue them. In truth, he who pays a joint debt,

pays to discharge himself; and so far from binding the others conclusively by his act, as virtually theirs also, he cannot recover over against them, in contribution, without such payment has been rightfully made, and ought to charge them. When the statute has run against a joint debt, the reasonable presumption is, that it is no longer a subsisting debt; and therefore, there is no ground on which to raise a virtual agency to pay that which is not admitted to exist. But if this were not so, still there is a great difference between creating a virtual agency, which is for the benefit of all, and one which is onerous and prejudicial to all; the one is not a natural or necessary consequence from the other. A person may well authorize the payment of a debt for which he is now liable; and yet refuse to authorize a charge, where there at present exists no legal liability to pay. Yet, if the principle of Lord Mansfield be correct, the acknowledgment of one joint debtor will bind all the rest, even though they should have utterly denied the debt, at the time when such acknowledgment was made." As early as 1865, the supreme court of Hawaii, in *Pustau* v. *Rixman,* 2 Haw. 730, said: "The tendency of modern legislation, we believe, in all commercial states, is rather to shorten than to extend the limit as to time, within which actions of any kind may be maintained, with a view to further the speedy settlement of controversies, to give additional facility to transactions affecting the possession and transfer of property, and to promote that repose which is the chief object of all such legislation." That case was an action upon a merchant's account, and the court held that the statute of six years applied, although merchants' accounts were not named in the statute. The court also held that payments by an assignee to whom the debtor had made a deed of conveyance of his property for the purpose of paying his debts, did not remove the bar of the statute, nor take the case out of its operation. The principle, and reasoning of that case, are contrary to the rule announced in the majority opinion, in my view of the same. In *Ahlo* v. *Tai*

Lung, 9 Haw. 272, the same question arose. The debtor had made an assignment for the benefit of his creditors, expressly authorizing the sale of his property and the payment of the proceeds to his creditors, yet the payments made by such assignee were held not to be payments by him, although the grounds for holding that the relation of principal and agent eixsted are far stronger than in the case of co-obligors or joint contractors, and no new promise was implied. The court quoted with approval from a number of cases, directly in line with my view of the proper rule to be applied, among others that of Campbell v. Baldwin, 130 Mass. 200, as follows: "The ground upon which a part-payment is held to take a case out of the statute is that such payment is a voluntary admission by the debtor that the debt is then due, which raises a new promise by implication to pay it or the balance. To have this effect it must be such an acknowledgment as reasonably leads to the inference that the debtor intended to renew his promise of payment. In the case at bar the plaintiff executed a mortgage in which he gave to the mortgagee a power to sell the estate and to appropriate the proceeds to the payment of the mortgage debt. But this cannot fairly be construed as an authority to the mortgagee to make a new promise on behalf of the mortgagor to pay the debt, so as to avoid the statute of limitations." Among other cases cited in Ahlo v. Tai Lung, supra, appears that of Stoddard v. Doane, 7 Gray 387, where the debtor in a schedule accompanying his assignment mentioned his creditors, and his assignee in accordance with the authority given him, made payments, and it was held that he was not the agent of the assignor, quoting as follows: "To have this effect (of a new promise) it is manifest that the payment must be made by the debtor, or by his order, or by an agent fully authorized for the purpose. It is an act of his mind, from which the implied promise to pay the residue of the debt arises. We are of opinion that a payment by an assignee in insolvency is not a payment by the insolvent or his order, within the

meaning of this rule. The assignee is bound by law to pay the dividend which has been declared, he is the debtor to that amount. The original debtor cannot delay or prevent such payment, if he would. It is not a personal or voluntary act of the insolvent." The settled policy of this court and of the United States Supreme Court, and other courts, to give force and effect to the statute of limitations, in line with what has been the settled policy of the courts of England, at different times, without evasion, is well illustrated in the decision in *Harris* v. *Clark,* 18 Haw. 569, wherein this court cites *Moore* v. *Bank of Columbia,* 6 Pet. 86, 92; *Wetzell* v. *Bussard,* 11 Wheat. 309; *Shepherd* v. *Thompson,* 122 U. S. 231; and quotes with approval from *Bell* v. *Morrison, supra,* where it was held that if there was no express new promise to pay, but one is to be implied from an acknowledgment, the acknowledgment ought to contain an unqualified and direct admission of a previous, subsisting debt, which the party is willing to pay. This last decision of this court cited is out of joint with the decision and reasoning in *Whitcomb* v. *Whiting.* In my opinion there is more reason for holding that the assignee, under such circumstances, is the agent of the assignor, than to hold that defendant McManus was the agent of Schurmann, under the facts of the case at bar. How can it be reasonably said that payments by McManus, made without the knowledge or consent of Schurmann, were "voluntary payments" made by Schurmann? or that it was an act of his mind? or his assent to such payments? The rule announced in *Whitcomb* v. *Whiting* was based upon a mere fiction of law, ignored the real relation existing between joint obligors, and presumed knowledge and assent on the part of all for the acts of another, whether known or unknown. This is contrary to the settled policy in this jurisdiction, both prior and subsequent to January 1, 1893, in my opinion. I am also of the opinion that good reasons for not evading the statute in this jurisdiction are set forth and shown in the decisions in *Cowhick* v. *Shingle,* 5 Wyo. 87, in

*Stubblefield* v. *McAuliff,* 20 Wash. 442, and in many other American authorities.

The opinion of the majority rests solely upon the theory that by section 1 of the Revised Laws which became operative January 1, 1893, the rule laid down in *Whitcomb* v. *Whiting* was adopted. I cannot take that view. The statute makes certain exceptions, those relating to settled policies, as well as precedents, in this jurisdiction. Even in the United States, where the laws of England were inherited, the common law in its entirety, was not adopted. "The common law of England is not to be taken in all respects to be that of *America.* Our ancestors brought with them from the mother country its general principles, and claimed it as their birthright; but they brought with them and adopted only that portion which was applicable to their needs and suitable to their situation and circumstances." (6 Am. & Eng. Enc. of Law 286, and numerous decisions cited in note 3.) Analogous questions have been decided in this jurisdiction. Keeping in mind the settled policy of giving force and effect to the statute of limitations in this jurisdiction and throughout the United States; that pretexts for its evasion are not tolerated; that unless an action is commenced within the statutory period for its limitation, there must be a new promise, express or implied, by the debtor, to which his mind has assented, something voluntarily and consciously done by him evincing an intent to recognize and pay the obligation, and we are assisted in determining whether the legislature in adopting section 1 of the Revised Laws intended to overturn this settled policy, by rulings of this court, and its predecessors, upon other questions involving the principle.

In *Henrique* v. *Paris,* 10 Haw. 408, speaking of certain principles of the common law, and in passing upon their adoption, or nonadoption by said statute, the court said: "There is not now and here the necessity that there was in England in the middle ages for laws against champerty and maintenance to prevent stirring up of suits for purposes of oppression, nor

Macaulay v. Schurmann, 22 Haw. 140.

.any reason why a landlord should not convey his estate with-
.out the consent (attornment) of his tenant. Freedom, rather
than restraint of alienation is required under present condi-
tions. The reasons for this rule having ceased, the rule itself
should also cease." To the same effect are the decisions in
*Mossman* v. *Hawaiian Government,* 10 Haw. 421, and in *Van
Gieson* v. *Magoon,* 20 Haw. 146.

In *Rooke* v. *Queen's Hospital,* 12 Haw. 375, the court, at
pp. 379, 380, to my mind, gives good reasons why it should now
be held that the rule laid down in *Whitcomb* v. *Whiting* was
not adopted, in that the said rule is contrary to our settled
policy, out of joint with the times, and not supported by our
precedents. The court there, *inter alia,* said: "In England,
the country of their origin, rules of property and of construc-
tion such as are likely to be involved in cases of this kind, even
though they may have grown up under conditions that no
longer exist, are adhered to with great rigidity, rules of con-
struction often being given almost the fixity of rules of law.
But in the United States the tendency is to reject what are
considered rules of property in England if out of joint with
the times, and to suffer rules of construction to yield readily
to the manifest intention of the testator. * * * Hawaiian leg-
islation, judicial decisions and national usage prior to the taking
effect of the statute (Sec. 1. R. L.) in question, January 1,
1893, undoubtedly followed the American tendency towards
flexibility and adaptability to present and local conditions,
rather than the English example of rigidity. See for example,
*Thurston* v. *Allen,* 8 Haw. 392. There exists even greater rea-
sons for departure from or failure to adopt English technical
rules and precedents here than in the United States. And since
the enactment of that statute (Sec. 1, R. L.) the previous re-
jection of certain material parts of a system has been regarded
as amounting to a rejection of other parts."

In *Branca* v. *Makuakane,* 13 Haw. 499, at page 500, is
found the following: "The question is whether the technical

rule of the common law which usually required the use of the word 'heirs,' and allowed no substitute therefor, however clear the intention might be, to carry an estate in fee simple, should be allowed to override the manifest intention of the parties. * * * That rule was a relic of the feudal system and grew up under conditions that no longer exist in England and never existed in these islands as it did in England. It is now regarded as purely technical, and its chief effect seems to be to defeat the intention of the parties. Accordingly it has been modified or repealed by statute in England, the home of its origin, and in nearly all of the States and Territories of the United States." Judge the rule announced in *Whitcomb v. Whiting* by the same standard, and it might well be said of it, that it is *technical,* that its chief effect is to defeat the object, purpose and operation of our statute of limitations; and, that it was repealed in England, the home of its birth, more than half a century ago; and, it has been repudiated in nearly all of the States and Territories of the United States.

Section 1 of the Revised Laws was construed in *Dole v. Gear,* 14 Haw. 554. This court, at page 561, said: "One of the exceptions named in the statute is that the common law shall not apply when it is 'otherwise expressly provided by the Hawaiian * * * laws.' We have just held that the statute that confers jurisdiction 'according to the usage and practice of courts of equity' does not require such usage and practice to be ascertained by reference to decisions at any particular period of time in the past or in England to the exclusion of the United States. Is not this, therefore, a case in which it is 'otherwise expressly provided by Hawaiian Laws' within the meaning of the exception named in the statute adopting the common law? There is much reason to believe that it is. But, assuming that it is not, still we are not bound by the old English rule for the following reasons. The common law consists of principles and not of set rules. It therefore admits of different applications under different conditions. Moreover by the

terms of our statute it is to be ascertained by American as well as English decisions. In *Morgan* v. *King,* 30 Barb. 9, the court, in construing a somewhat similar statute, said (at p. 13) : 'The adoption of the common law, in the most general terms, by the government of any country, would not necessarily require or admit of an unqualified application of all its rules, without regard to local circumstances, however well settled and generally received those rules might be. Its rules are modified upon its own principles, not in violation of them' and (at p. 14) 'when it is said that we have in this country adopted the common law of England, it is not meant that we have adopted any mere formal rules, or any written code, or the mere verbiage in which the common law is expressed. It is aptly termed the *unwritten law* of England; and we have adopted it as a constantly improving science, rather than as an *art;* as a system of *legal logic,* rather than as a *code* of *rules.* In short, in adopting the common law, we have adopted its fundamental principles and modes of reasoning, and the substance of its rules as illustrated by the reasons on which they are based, rather than by the mere words in which they are expressed.' See also Bouvier, Tit. Com. Law. In *Sayward* v. *Carlson,* 1 Wash. St. 29, in construing a similar statute the court said (at p. 40) : 'But we do not subscribe to the next proposition, that resort can be had only to the decisions of English courts, or to those of American courts which have followed them, to ascertain what the common law of England is or was, unless the English decisions commend themselves to reason, or have been so long and generally followed that to depart from them would tend to unsettle what has, by 'immemorial and universal usage,' been understood to be settled. The common law grew with society, not ahead of it. As society became more complex, and new demands were made upon the law by reason of new circumstances, the courts originally, in England, out of the storehouse of reason and good sense, declared the 'common law.' But since courts have had an existence in America they

have never hesitated to take upon themselves the responsibility of saying what is the common law, notwithstanding current English decisions, especially upon questions involving new conditions. Therefore, we have the 'common law' as declared by the highest courts of this, that and the other state, and by the courts of the United States, sometimes varying in each. And we understand, by §1 of the code, that where there are no governing provisions of the written laws, the courts of the late territory, and of this state, are, in all matters coming before them, to endeavor to administer justice according to the promptings of reason and common sense, which are the cardinal principles of the common law; but not that the decisions of the English courts are to be taken blindly and without inquiry as to their reasoning or application to the circumstances.'" This court then proceeds to show that when conditions change that the rules of the common law must give way by modification or abrogation.

In my opinion, the decision in *Cross* v. *Allen,* 141 U. S. 528, should not be followed, for the reason that it is at variance with "our national usage" and not adapted to our circumstances. Moreover, what is said in that decision in regard to Lord Mansfield's rule, is *obiter dictum,* being unnecessary to a decision of the case. That was a suit in equity to foreclose a mortgage given by Cross and wife upon property, some of which belonged to the husband, and some to the wife. Suit was brought after the statutory period had elapsed, the wife had died, and it was sought to remove the bar by certain payments made. The wife was not personally bound, not having signed the note. The court held that the mortgage was a mere incident to the debt, and subsisted as long as the debt did, which is, evidently, the correct rule. The case was evidently decided under the Oregon statute, quoted in the opinion, where it is expressly provided that the statute runs only from the date of the last payment, and the United States Supreme Court must have given to the said statute the same interpretation given to it by the Supreme

Court of Oregon in *Partlow* v. *Singer,* 2 Ore. 308, and other Oregon cases.

There is nothing in the record showing that the defendant Schurmann, plaintiff in error, ever acknowledged the existence of the debt, voluntarily made any payment thereon, or promised to pay same, within four years next preceding the commencement of this action. In my opinion the judgment, sought to be reviewed, should be reversed.