# WORTH O. AIKEN, TRUSTEE FOR LILLIAN AIKEN HARDY BALL AND HOLLIS AIKEN HARDY, *v.* VIRGIL G. NANCE AND A. F. TAVARES.

## No. 1592.

### ERROR TO CIRCUIT COURT SECOND CIRCUIT. HON. D. H. CASE, JUDGE.

ARGUED FEBRUARY 5, 1925.                    DECIDED APRIL 13, 1925.

### PETERS, C. J., PERRY AND LINDSAY, JJ.

BILLS AND NOTES—*statute of limitations—payment of interest by maker —guarantor.*

> The payment of interest by the maker of a promissory note within the period of limitation and without the knowledge or authorization of the guarantor does not start the statute of limitations to run afresh as to the guarantor.

OPINION OF THE COURT BY LINDSAY, J.
(Peters, C. J., concurring.)

On June 22, 1910, the defendant Nance made, executed and delivered to the predecessor in interest of the plaintiff a promissory note for the sum of $60 payable six months from date, with interest thereon at the rate of ten per cent. per annum. At the same time and place, and before delivery of the note, the defendant Tavares signed on the back thereof an indorsement reading "For value received I hereby guarantee the payment of the within note, waiving notice, demand, and protest." For several years after the maturity of the note, the maker made annual payments of interest, the last of which was on May 7, 1917. Although the evidence tended to show that the guarantor had made a payment of interest on the note on January 31, 1913, it seems to be undisputed that he had made no further payments since that date, and that the last four payments of interest were made

by the maker without the knowledge or authorization of the guarantor. This action was commenced on December 22, 1922, less than six years from the last payment of interest by the maker. At the trial the guarantor relied on the statute of limitations but the trial court held that, by reason of the payment of interest by the maker of the note, the statute had not run in favor of either of the defendants, and gave judgment against them both, from which judgment the guarantor, Tavares, has brought the case here on writ of error.

The sole question for our determination is whether the running of the statute of limitations in favor of a guarantor of a promissory note is interrupted by a new promise made by the maker without the knowledge or authorization of the guarantor. In the instant case the statute commenced to run in favor of the guarantor on January 3, 1913, and, unless interrupted, the period of limitation would expire in January, 1919, several years before suit was commenced. The precise question involved has never been raised in this jurisdiction. In *Macaulay* v. *Schurmann*, 22 Haw. 140, this court held that the payment of interest by one of two joint and several makers of a promissory note within the period of limitation will start the statute of limitations to run afresh as to the other, as well as against the one who made the payment, though the payment was made without the knowledge or authorization of the other. This court in reaching this conclusion held itself bound by section 1 of the Revised Laws providing that, except in certain cases, the common law of England, as ascertained by English and American decisions, is the common law of this Territory, and that the rule enunciated was that of the common law. As stated by the court, the leading case in which this rule is declared is that of *Whitcomb* v. *Whiting*, 2 Dougl. 652, 99 Eng.

Repr. 413, decided in 1781. The opinion in that case is by the learned Lord Mansfield, who based his ruling upon the doctrine of agency saying, "Payment by one, is payment for all, the one acting, virtually, as agent for the rest; and, in the same manner, an admission by one, is an admission by all; and the law raises the promise to pay, when the debt is admitted to be due."

The theory that joint obligors of a debt are agents, one of the other, and as such able to bind each other, seems also to have prevailed under the civil law. As stated in *Jacobs* v. *Williams,* 12 Rob. (La.) 183, 184, "We understand that solidarity exists in the meaning of the Code, when several persons bind themselves towards another for the same sum, at the same time, and in the same contract; and so obligate themselves, that each may be compelled to pay the whole debt, and that payment made by one of them exonerates the others towards the creditor; and the obligation thus contracted is one, in solido, although one of the debtors be obliged differently from the others to the payment of one and the same thing; as, if the one be but conditionally bound, while the engagement of the others is pure and simple, or if the one is allowed a term which is not granted to the others. * * * Such were, also, the requisites of the Roman law to create among debtors a perfect solidarity. 6 Toullier, No. 723. 2 Duranton on Obligations, No. 547. Pothier on Oblig. No. 263. In giving his views as to the reason why the Roman law gave to the acknowledgment of one of several debtors in solido, the effect of interrupting prescription as to the others, Toullier says, that it is to be found in the very nature of the obligation, and is clearly deducible from the law itself of Justinian, which declares, that it is just, humanum, that the acknowledgment of a debt created by one and the same contract, uno eodemque contractu, should bind

equally all the debtors to pay such debt. When, says this author, several debtors bind themselves for the same debt, in the same contract, they create among themselves a kind of partnership as regards that debt; they mutually charge each other by a tacit, yet real proxy to pay it. The debtor, then, who alone pays the whole debt, acts, not only for himself, but also for those whose share he pays; and, in like manner, if he alone acknowledge the debt, he does so, not only in his own name, but also in that of his codebtors, by virtue of their tacit proxy; and the interruption of prescription which results from such acknowledgment must exist and have its effect as to all of them." Having thus shown that payment by one joint debtor started the statute of limitations to run afresh as to all of the other joint debtors, the court goes on to say that this was not so in the case of the indorser of a promissory note, between whom and the maker no relationship resembling that of agency exists. "From these remarks of the learned jurist, it is easy to perceive how different is the solidarity which exists between the drawer and indorsers of a promissory note, and how inapplicable to them are the provisions of our Code in relation to debtors in solido. Instead of being bound in the same contract and at the same time, the obligation of each of them arises from different and successive contracts, without any privity or reciprocity between them. It is true, that when the note is protested, and the several indorsers are duly notified of such protest, they become each bound for the whole amount of the note towards the holder. This indebtedness of each of them for the whole debt creates, to be sure, a kind of imperfect solidarity between them, but it is not that contemplated by the Code. The obligation contracted in solido, says art. 2099, is, of right, divided amongst the debtors, who,

between themselves, are liable each only for his part and portion. If one of the codebtors, in solido, pay the whole debt, he can claim from the others no more than the part and portion of each. If one of them be insolvent, the loss occasioned by his insolvency must be equally shared amongst all the other solvent codebtors, and him who has made the payment. Art. 2100. From these, and other provisions of the Code, it is apparent that the rights and relative position of debtors, in solido, therein spoken of, are widely different from those of the maker and indorsers of a promissory note or bill of exchange. Each indorsement is a distinct contract; it is a transfer of the amount due by the maker, for which each indorser or transferror becomes successively bound towards the holder, if duly notified of the maker's default. If payment is made by the maker, or the first indorser, they have nothing to claim of the subsequent parties on the note. If it is the last indorser who pays he can claim the whole amount from any of the indorsers before him, or from the maker; and each indorser who pays, has the same right against every previous indorser, and so on to the maker. It is in view of these striking differences between the debtors, in solido, as known to the civil law, and the drawer and indorsers of notes and bills of exchange, that Duranton expresses the opinion, that the rights and obligations of the latter are not to be governed wholly by the principles relative to obligations in solido, properly speaking. 2 Duranton, No. 563. We, therefore, conclude, that the provisions of the Code, in relation to the interruption of prescription, as regards debtors in solido do not apply to the drawer and indorsers of notes, and other negotiable instruments used in commerce."

While the rule that payment of interest by one joint and several maker starts the statute of limitations to

run afresh as to the other joint and several makers has been recognized and followed in this jurisdiction, it does not follow that the rule should be extended to include others than such joint and several makers. The court in Georgia, where the common-law rule as to joint and several makers is followed, has, in *Hunter* v. *Robertson,* 30 Ga. 479, refused to extend the rule to include indorsers of promissory notes, the court at page 480 saying: "Is it true that a payment by a maker, and before the statutory bar has attached to the debt, is sufficient to take the case out of the statute, as to the indorser, and constitute a new starting point for the statute, as to him? That it is true as to a joint obligor, has been well settled by this court. *Cox vs. Bailey,* 9 *Ga.* 467. In the latter case, the correctness of the principle, even as to joint contractors and partners, was gravely doubted by this court; but as the question was no longer open, but an adjudicated one, the principle was adhered to, although a contrary holding would have been the better policy. The reason for the principle is, that, as between joint contractors or obligors and partners, there is a community of interest in that particular business, that what affects one affects the whole; that the act of one is the act of all; that is, he is, in that matter, considered as the agent of the other partners. But can that be true as to indorsers? We think not. The contract of the indorser is a new and independent one of that of the maker: *Story on Promissory Notes, sec.* 135. While there is, to a certain extent, a privity between them, there is not a community of interest, in all respects. The indorser is bound to the extent of his contract, and according to its terms; that which will discharge an indorser will not always discharge a joint obligor. The contract of the indorser, under our statute, is as surety for the maker; is accessory to his con-

tract, and coextensive, with it, but that is the con-
tract simply to which the indorser accedes, if there
be a new contract, a new undertaking, or any change in
the old one, the liability of the security, or, as in this
case, the indorser is gone; not so with the joint obligor,
his liability continues until the debt is paid. If there
be a change in the contract, he is supposed to assent
to it, because of his common interest in the considera-
tion and advantages of the contract. The security or
indorser, on the other hand, stands on his contract as
such. Any modification of it, whether to his interest
or against it, works his complete discharge, unless he
agrees to it. The theory of the principle, as decided
by Lord Mansfield, in *Whitcomb vs. Whiting, Doug.* 652,
and which case the courts in Georgia and elsewhere,
recognizing this principle, have but followed, goes,
according to my understanding, not only on the idea
that the debt is a subsisting one, but that he, the
obligor, making the payment, will pay the whole debt,
and the statute runs no longer against the old promise,
but only against this new promise. If I am right in
this, how can the indorser be affected by such new
promise, to which he was no party and did not assent
thereto? How can his original promise or contract be
extended without his concurrence? It can not be on
principle. But again: If the principle is wrong when
applied to joint makers—and there is no doubt in my
mind but that it is—shall we extend it to an indorser
on the same fallacious reasons? We think not; because,
when it is attempted to be applied to an indorser or
surety, another and more important principle will be
violated; that is, the *strict right* of such indorser or
surety to stand upon, and be bound by, his contract, to
the extent, and in the manner only as he made it. For
these reasons, the judgment of the court below must be

reversed, it being the opinion of this court that a pay-
ment by the principal or maker of a promissory note
does not constitute a new starting point for the statute
of limitations as against the indorser or surety, unless
the surety or indorser is a party to such payment, and
that the plea of the statute of limitations constituted
a complete bar to the cause of action as against the
indorser." See also *Dean* v. *Munroe*, 32 Ga. 28. Mr.
Angell, in his work on Limitations of Actions, after
discussing the rule that joint obligors, under the com-
mon law as laid down in *Whitcomb* v. *Whiting*, may
bind each other to the extent of making a fresh promise
which will remove the bar of the statute of limitations,
says (Sec. 250) : "But it is evident that a payment
made by one of several liable *alieno jure*, cannot raise
an implied promise by them all, and that where the
relationship of the parties to a contract is collateral,
and there is no *aggregatio mentium*, neither can vary or
affect the liability of the other. Where the maker of a
promissory note of more than six years' standing died
insolvent, he and a guarantor of the note, it was held,
were never jointly liable; and the undertaking of the
guarantor being independent of, and collateral to, that
of the maker, the allowance by him as a commissioner,
of the maker's note after his decease as a valid claim
against the estate, implied no promise to pay the debt.
Both maker and guarantor stand equally independent to
each other. If A guarantees to B the performance of
any contract he may make with C, and six years elapse
after the contract between B and C, and before the
bringing of suit against A upon his guaranty, no acknowl-
edgment by C subsequent to the contract can take the
case out of the statute as to A. A made an engagement
by himself, and was in no kind of *partnership*. There
can be no question that a party attempted to be charged

as the indorser of a negotiable note may be protected by the statute, notwithstanding the maker may have made even a direct and positive promise, within six years, to pay the same. And it has been held expressly, that where an acknowledgment was made by an accommodation acceptor, within six years, of his liability to the payee, it was insufficient to deprive the drawer from the protection of the statute. It has been considered an extravagant extension of the general rule to make a mere payment of a sum of money to the indorsee of a note, by one of two joint makers, sufficient to render the other liable, as the money might have been paid on some other account. The other party must expressly acknowledge the payment on account of the note."

One of the cases cited by Angell in support of the text quoted from is that of *Gardiner* v. *Nutting,* 5 Greenl. (Me.) 117. The indorsement in that case read: "We hereby guarantee the payment of the within." On suit brought against the indorser who pleaded the statute of limitations it was insisted that by reason of payments made by the principal makers the operation of the statute of limitations had been interrupted as to all of the defendants. The court, however, repudiated this theory, saying (p. 119): "Several authorities have been cited to show that it has this effect as it respects the makers; and it is contended that an admission and promise by one of several persons jointly and severally liable, defeats the operation of the statute as it respects the whole. But in this case, the makers and the defendants were never jointly liable to the plaintiff. The undertaking of the defendants was independent of, and collateral to, that of the makers. Neither of these collateral parties has a right to affect or vary the liability of the other. Each may rest upon any legal ground of defence, which no admission of the other can defeat.

Peters, C. J., concurring.

There can be no question that a party, attempted to be charged as the indorser of a negotiable note, may be protected by the statute of limitations, notwithstanding the maker may have made a direct and positive promise to pay the same within six years."

Whatever may be said as to the relationship of agency that is said to exist between joint obligors or joint contractors, it cannot, on principle, be asserted that such relationship exists between the maker and guarantor of a promissory note, or that because A has guaranteed the performance of the contract of B, A has, by such guaranty, created B his agent, authorized, as such, to make other contracts binding upon A. We are of the opinion that the payment of interest by the defendant Nance did not start the statute of limitations to run afresh as to the defendant Tavares.

The judgment as against the defendant Nance will stand; as against the defendant Tavares it is set aside. A judgment to that effect will be entered herein upon presentation.

*M. T. Furtado* (also on the briefs) for plaintiff in error.
*E. R. Bevins* (also on the brief) for defendant in error.

#### CONCURRING OPINION OF PETERS, C. J.

This case involves the application of the rule of the common law enunciated in the case of *Whitcomb* v. *Whiting*, 2 Doug. 652, and adopted in this jurisdiction in the case of *Macaulay* v. *Schurmann*, 22 Haw. 140, that the payment made by one obligor on account of interest on a note will start the statute of limitations to run afresh as to the coobligor even though such payment were made by the former without knowledge or authorization, express or implied, of the latter. The note upon which interest was paid in the instant case was a negotiable promissory note executed on June 22, 1910. At the time of the execution of the note there was in full

force and effect in Hawaii a negotiable instruments act found in the Revision of 1925 as chapter 212, sections 3695 to 3889, both inclusive. These sections conform to the uniform negotiable instruments act as it appears in the standard textbooks and as it is found in most of the states which have adopted it. "Where the Act speaks it controls." *Case* v. *McKinnis,* 213 Pac. (Ore.) 422, 426. The defendant Nance signed the note upon the face thereof as maker. R. L. 1925, s. 3754, provides: "The maker of a negotiable instrument by making it engages that he will pay it according to its tenor." Nance's engagement was to pay the note according to its tenor. He was, therefore, the maker thereof. (*Aud* v. *Magruder,* 10 Cal. 282, 289.) The defendant Tavares was a guarantor. Section 3757 provides: "A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." Tavares was neither a maker, drawer nor acceptor. He cannot be deemed to be an indorser because he clearly indicated by appropriate words his intention to be bound in another capacity, to wit, that of guarantor. According to the allegations of the complaint and the proof Tavares indorsed the guarantee upon the back of the note for the accommodation of the maker Nance and without any consideration other than the loan by the payee to Nance of the amount of the note. Under the circumstances are Nance and Tavares comakers or co-obligors within the meaning of the *Whiting* case? Whether obligors on a negotiable instrument are co-makers or coobligors depends for its determination upon whether they are "primarily" or "secondarily" liable, as those terms are defined in the negotiable instruments act. The act nowhere speaks of or defines who are

comakers or coobligors. R. L. 1925, s. 3886, provides: "The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are 'secondarily' liable." Parties to a negotiable instrument in order to be comakers or coobligors must be primarily liable thereunder. A person primarily liable and a person secondarily liable are not comakers or coobligors. Before the passage of the uniform negotiable instruments act there was an irreconcilable conflict in the authorities upon the liability of a stranger to a promissory note, who, prior to its delivery for the accommodation of the maker and for the purpose of giving the note credit and aiding in its negotiability, placed his name in blank upon the back thereof or indorsed upon the back a guarantee of its payment, waiving notice, protest and demand. One line of cases held him to be a comaker. The following authorities, however, indicate that whereas in those states from which they are cited the rule formerly obtained that an accommodation indorser prior to delivery was a comaker, since the adoption of the uniform negotiable instruments act this liability is held to be that of an indorser and secondary: *Rockfield* v. *First Nat. Bank,* 77 Ohio St. 311, 83 N. E. 392; *Deahy* v. *Choquet,* 28 R. I. 338, 67 Atl. 421; *Gibbs* v. *Guaraglia,* 75 N. J. L. 168, 67 Atl. 81; *Baumeister* v. *Kuntz,* 53 Fla. 340, 42 So. 886; *Thorpe* v. *White,* 188 Mass. 333, 74 N. E. 592; *McLean* v. *Bryer,* 24 R. I. 599, 54 Atl. 373; *Case* v. *McKinnis, supra.* By analogy, whatever may have been the rule formerly as to the liability of a third party, a stranger to a promissory note who prior to delivery guaranteed the payment thereof, waiving notice, protest and demand, under the uniform negotiable instruments act his liability similarly as that of an indorser is secondary. As in the case of an indorser waiving notice,

Peters, C. J., concurring.

protest and demand his liability becomes absolute only upon default of the person or persons primarily liable, —in this case the maker. There is a paucity of authority on the liability of a guarantor before delivery under the uniform negotiable instruments act but such cases as I have been able to find are uniformly to the effect that a guarantor guaranteeing the payment of a note under circumstances similar to the present case is secondarily liable. In the case of *Northern State Bank* v. *Bellamy,* 125 N. W. (N. D.) 888, the defendant Bellamy, a stranger to the note, prior to delivery indorsed the following guaranty on the back: "For value received I hereby guarantee the payment of the within note and hereby waive presentment, demand, protest and notice of protest." Upon suit Bellamy claimed that the time of payment had been extended by the holder without his (Bellamy's) knowledge and consent and that he was thereby released from liability upon his guaranty. The court held: "In 1899 a new law upon the subject of negotiable instruments was enacted by the legislature * * *. Section 6422, Rev. Codes 1905, which is a part of this new enactment, is as follows: 'A person secondarily liable upon the instrument is discharged: * * * By any agreement binding upon the holder to extend the time of payment * * * unless made with the assent of the party secondarily liable * * *.' It seems clear that if by the adoption of the new law a guarantor of payment can be said to be included in the class of parties primarily liable on the instrument appellant would not be released from his obligation by the extension of time given * * * as such act now operates to release only those secondarily liable. The question of appellant's liability, therefore, depends wholly upon the construction to be given the section defining the term 'person primarily liable.' * * * The nature and character

of the contract of guaranty is an important factor in the determination of this point. 'Guaranty is an undertaking by one person that another shall perform his contract or fulfill his obligation, and that in case he does not do so the guarantor will do it for him. A guarantor of a bill or note is one who engages that the note shall be paid.' ' * * * the contract of a guarantor is his own separate contract; it is in the nature of a warranty by him that the thing guaranteed to be done by the principal shall be done and is *not* merely an engagement *jointly* with the principal to do the thing. *A guarantor, not being a joint contractor with his principal,* is not bound to do what the principal has contracted to do, like a surety, but only to answer for the consequences of the default of the principal. The guarantor has to answer for the consequences of his principal's default.' * * * With these considerations in mind it is apparent that while in its ultimate results the liability of a guarantor may be as absolute as that of a surety the nature of his contract and the procedure necessary to hold him are very . different. Authorities all agree that a contract of guaranty is entirely separate from that contained in the negotiable instrument to which it is appended and that the remedy of the holder of the note against a guarantor must be pursued as a distinct cause of action. * * * The fact that his contract is indorsed upon the negotiable instrument by which he is bound does not in the least alter the character of the obligation. * * * The terms 'primary and secondary' when they apply to the parties to an obligation 'refer to the remedy provided by law for enforcing the obligation rather than to the character and limits of the obligation itself.' *Kilton* v. *Prov. Tool Co.* 22 R. I. 605, 48 Atl. 1039. Therefore, however closely analogous may be the ultimate liability upon the instrument

of surety and guarantor, the clear distinction in the character of their respective contracts and the procedure by which their obligations must be enforced, operates to place these parties in different classes of the persons liable as defined by the new law of negotiable instruments. The purpose in making a classification not provided by the former law would seem to be to strengthen the credit of negotiable paper by protecting the holder against a claim that persons directly and absolutely liable by the terms of the instrument had in fact signed, not as joint makers, but in some other capacity." (Instances of such attempts may be found in the following cases: *Graham* v. *Shephard,* 189 S. W. (Tenn.) 867; *In re Nashville Laundry Co.,* 240 Fed. 795; *National Citizens' Bank* v. *Toplitz,* 81 N. Y. S. 422; *Cellers* v. *Meachcm,* 89 Pac. (Ore.) 426; *Vanderford* v. *Farmers' & Mechanics' Nat. Bank,* 66 Atl. (Md.) 47; *Lane* v. *Hyder,* 147 S. W. (Mo. Ap.) 514.) Continuing the citation: "As the law now stands, these questions of primary and secondary liability are to be resolved only upon the face of the instrument. All persons by its terms absolutely required to pay the same may be held as primarily liable; all others, secondarily. When a party on signing clearly indicates upon the instrument the capacity in which he is willing to be bound, the holder in accepting it cannot misapprehend its true quality for he then knows that the party may be held in that capacity and no other. Appellant signed as guarantor, and as in that capacity he was secondarily liable upon the instrument he was released, as under the former law, by an extension of time to the principal debtor without his assent." In *Farmers' and Drovers' Bank* v. *Bashor,* 160 Pac. (Kans.) 208, the payee of a note before maturity transferred the same under the following guaranty indorsed on the back: "For value received I hereby

guarantee the payment of the within note at maturity * * * waiving demand, notice of nonpayment and protest." Thereafter the holder granted the maker an extension of time for payment. The court held: " * * * the defendant was a party secondarily liable. *Bank* v. *Bellamy,* 19 N. D. 509, 125 N. W. 888, 31 L. R. A. (N. S.) 149. He was discharged by any agreement binding on the bank to extend the time of payment unless the agreement were made with the defendant's assent * * *. An extension without such assent ipso facto discharges the party secondarily liable * * *." In *Noble* v. *Beeman-Spaulding-Woodward Co.,* 131 Pac. (Ore.) 1006, Noble, a stranger to the instrument, before delivery indorsed on the back of the note the following: "For value received, I hereby guarantee the payment of the within note at maturity, * * * and hereby waive demand, protest and notice of non-payment * * *." The court in considering Noble's liability held (p. 1010) : "Taking Noble's agreement and the note together, nothing else being shown, his liability *is not concurrent with that of those who signed the note as makers,* but successive to theirs, and this would be true in the absence of any other showing, even if Noble had only written his name on the back of the note before it was delivered to the bank and the money advanced thereon. The law of this state says that: 'The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same.' * * * On the face of the note this is the liability of the defendant Smith" (the maker).

Judging Tavares' liability from the terms of the note it is apparent that he was not obligated to pay the amount thereof until default made by the maker Nance. His contract with the payee only came into existence upon such default. His was a "secondary" liability, as that term is employed in the negotiable instruments act,

and as a secondary obligor he is not a comaker or co-obligor.  He was not bound absolutely to pay the note *in solido* but only in the event of the failure of Nance so to do.  Under the circumstances no agency existed as between Tavares and Nance and Nance could not bind Tavares so as to start the statute of limitations running afresh against the latter by the payment of interest on account of the note without Tavares' knowledge and previous authorization, express or implied.

I join in the conclusion of the majority that the judgment as to Tavares should be vacated and set aside.